FOR THE

## COUNTY OF ADDISON.

JANUARY TERM, 1850.

---

PRESENT,

Hon. STEPHEN ROYCE, Chief Judge.
Hon. MILO L. BENNETT,
Hon. DANIEL KELLOGG, } Assistant Judges.
Hon. LUKE P. POLAND,

---

## JOHN LOWRY AND ARCHIBALD H. LOWRY v. HIRAM ADAMS.

For the purpose of ascertaining the intent of the parties in making a contract the court will consider the situation of the parties, the subject matter of the contract, and the object to be attained by it; and, even when the contract is reduced to writing, will allow these circumstances to be shown by parol evidence, if the intent of the parties, upon the face of the contract, is doubtful, or the language used by them will admit of more than one construction.

D., who was a merchant in the country, dealing in merchandize of all descriptions usually kept for sale in a country store, being about to purchase his stock of goods in New York, received from the defendant, who was his father in law, and who had previously been his partner in business, a written guaranty, di-

Lowry et al. *v.* Adams.

rected to no person named, by which the defendant agreed to be responsible for what goods D. might purchase in New York more than he paid for himself; *Held,* that the intent of the defendant was apparent, to give to D. the necessary credit, to enable him to purchase his stock of goods of as many different dealers, as might become necessary, in order to complete his assortment.

*Held,* also, that the defendant thereby became responsible to every person, who should sell goods to D., relying upon the credit of the guarantee, and that he became liable to each in the same manner, and to the same legal effect and extent, as if he had given a separate letter to each; and that his liability was not affected by the fact, that the goods were sold to D. upon the usual credit given to country merchants for similar purchases.

Notice of the acceptance of a guarantee must be given to the guarantor within a reasonable time; and the question, whether proper notice has been given, is usually one of fact, to be determined by the jury upon consideration of the relative situation of the parties and all the attending circumstances.

Assumpsit upon a written contract of guaranty. Plea, the general issue, and trial by jury, December Term, 1849,—Bennett, J., presiding.

On trial the plaintiff gave evidence tending to prove, that in September, 1846, E. N. Drury was a merchant in Vergennes, dealing in merchandize of the various descriptions usually kept in a country store; that he was the son in law of the defendant, and had been a partner with him in business, and had purchased the defendant's interest in the goods of their firm; that Drury being about going to New York to purchase his fall stock of goods, the defendant gave to him a written guarantee, signed by himself, addressed to no person in particular, dated September 17, 1846, which was in these words,—" Mr. E. N. Drury is buying goods in New York, and what he may want more than he pays for himself I will be responsible for;" that about the twenty second of September, 1846, Drury, upon the credit of the defendant's guaranty, purchased goods of Stearns & Johnson, in New York, and deposited the guaranty with them, saying that he should purchase goods of other persons in New York, and desiring Stearns & Johnson to exhibit the guaranty to those who might call and see it, and to hold it for the benefit of those from whom he might purchase; that about the 25th of September, 1846, Drury desired to purchase goods of the plaintiffs, upon a credit, and informed the plaintiffs, that he had received a general

VOL. XXII.                    21

Lowry et al. *v.* Adams.

guaranty from the defendant, which was deposited with Stearns & Johnson, and desired the plaintiffs to examine it; that the plaintiffs accordingly examined the guaranty, and sold to Drury, upon the faith of it, goods to the amount of $371,38, taking Drury's promissory note for the amount, payable in four months, not as payment, but for the purpose of liquidating the account; that subsequently, about the ninth of November, 1846, the plaintiffs sold to Drury, upon the faith of the same guaranty, other goods, to the amount of $81,90; that no part of the purchase money of the goods sold at either time had ever been paid to the plaintiffs; that the plaintiffs in December, 1846, gave notice to the defendant, that they had sold to Drury goods to the several amounts above specified, upon the faith of the guaranty, and that they should rely upon the defendant for payment; that at this time, and for some time subsequent, Drury was engaged in his usual business, and was apparently solvent; and that subsequently his goods were attached at the suit of Harry Adams, upon notes given by Drury to the defendant and by him indorsed to Harry Adams. The testimony on the part of the defendant tended to prove, that such notice was not given until some time in April, 1847.

Upon these facts, the court having intimated, that they should charge the jury, that the plaintiffs could not sustain an action upon the guaranty, the plaintiffs submitted to a verdict for the defendant, with liberty to except. Exceptions allowed.

*F. E. Woodbridge* and *E. J. Phelps* for plaintiffs.

The guaranty was intended to apply to the purchase, by Drury, of the amount and descriptions of goods, reasonably necessary to make his fall stock, of the various persons to whom it was necessary to resort, in order to obtain them. Its effect was not exhausted, until the stock was completed, and cannot be restricted to the first individual, who happened to furnish, upon the faith of it, a single variety of the goods required. It is simply a question of the intention of the parties. A general guaranty of this character attaches in favor of whoever acts upon the faith of it, to an extent only limited by its terms. *Lawrason* v. *Mason,* 1 U. S. Cond. R. 605. *Walton* v. *Dodson,* 3 C. & P. 162, [14 E. C. L. 250.] *Mason* v. *Pritchard,* 12 East 227. Story on Bills, §§ 544-6. Fell on Guar.

Lowry et al. *v.* Adams.

39. *McClung* v. *Means*, 4 Ham. 196, [Ohio Cond. R. 773.] It is to be taken in connection with the situation of the parties, the circumstances under which it was executed, and the object proposed to be effected; 13 Pet. 89; *Wilson* v. *Troup*, 2 Cow. 195; *Lawrence* v. *Dole*, 11 Vt. 549; *French* v. *Carhart*, 1 Comst. 96; Chit. on Cont. 74; and with the acts of the parties under it; *Livingston* v. *Ten Broeck*, 16 Johns. 22; 1 Comst. 96; and with the known usage of trade; *Colemard* v. *Lamb*, 15 Wend. 330; *Smith* v. *Dana*, 6 Hill 543. And if any doubt can arise as to the intention, it is a question that should have been submitted to the jury; *Fowle* v. *Bigelow*, 10 Mass. 379. By the law of New York no notice of the acceptance of the guaranty was necessary; *Smith* v. *Dana*, 6 Hill 533; *Douglass* v. *Howland*, 24 Wend. 35. But if notice were necessary, the case shows, that reasonable and sufficient notice was given. At most, it would be a question for the jury, under proper instructions.

*J. Pierpoint* for defendant.

1. The guaranty relied upon by the plaintiffs, not having been addressed to any person in particular, might be accepted and acted upon by any one; but when accepted by one, it became a special guaranty, and has the same legal effect, and is to be declared upon, as though it had been originally addressed to such person. The declarations of Drury can have no effect in the case, and are inadmissible to enlarge the operation of the writing. 5 Wend. 307. 26 Ib. 425. 19 Ib. 557.

2. The guaranty does not authorize the selling of goods to Drury on a credit, by a person who accepts it.

3. The notice to the defendant of the acceptance of the guaranty was insufficient. *Lee* v. *Dick*, 10 Pet. 482. *Reynolds* v. *Douglass*, 12 Pet. 497. *Adams* v. *Jones*, Ib. 207. 4 Greenl. 521. 7 Ib. 115. 1 Mason 323. *Craft* v. *Johan*, 13 Conn. 28. *Edmondston* v. *Drake*, 5 Pet. 624. 17 Johns. 134. *Bradley* v. *Cary*, 8 Greenl. 234. 3 Conn. 438.

The opinion of the court was delivered by

POLAND, J. From the bill of exceptions and other papers referred to in this case the following facts appear to have been proved by the

plaintiffs at the trial of this cause in the county court. That E. N. Drury was the son in law of the defendant, and some time previous to September, 1846, had been in partnership with him in mercantile business in the city of Vergennes, and had purchased the defendant's interest in the partnership business and had succeeded him therein. That in the month of September, 1846, Drury, being about to go to the city of New York to purchase his usual supply of fall goods for his store in Vergennes, applied to the defendant for a letter of credit, to enable him to purchase said goods; and the defendant, on the seventeenth day of September, 1846, gave to Drury a writing in these words, to wit;—" Mr. E. N. Drury is buying " goods in New York, and what he may want, more than he pays " for himself, I will be responsible for ; Vergennes, September 17, " 1846. (Signed) Hiram Adams." That Drury carried said writing to the city of New York, and, on the twenty second day of September, 1846, presented the same to Stearns & Johnson, and, upon the strength and credit of it, purchased of them a small bill of goods. That Drury left said paper in the possession of Stearns & Johnson, and at the same time told them, that he should buy goods of other persons in New York, and desired Stearns & Johnson to keep said paper in their possession and exhibit it to those who called on them to see it, and to hold it for the use and benefit of any person, from whom he might purchase goods. That on the same day, or within a day or two' after, Drury applied to the plaintiffs to sell him a bill of goods on credit, and at the same time informed them of said writing, and that he had deposited the same with Stearns & Johnson for the purposes above stated ; and the plaintiffs thereupon sent their clerk to the store of Stearns & Johnson to see the writing, and it was exhibited to the clerk by Stearns & Johnson, and a copy of it was taken by him and delivered to the plaintiffs. That the plaintiffs, being satisfied of the sufficiency of said paper, sold and delivered to Drury a bill of goods, amounting to the sum of $371,38, and took his note for the amount, payable in four months from date, (September 25, 1846,) relying upon the said paper as their security for payment. That on the ninth day of November, 1846, the plaintiffs, upon the credit and faith of said paper, sold and delivered to Drury another bill of goods, amounting to the sum of $81,90. That Drury returned with said goods to Vergennes,

and continued to carry on his business there, as a merchant, until some time in the winter of 1847, when he failed and became insolvent, and the plaintiffs have never been paid for said goods. The plaintiffs introduced evidence tending to prove, that between the sixth day of December, 1846, and the second Tuesday of the same month they gave notice to the defendant, that they had sold and delivered the above mentioned bills of goods to Drury, upon the faith of defendant's said guaranty, that the same were not paid for, and that they should look to the defendant for payment,—and also proved, that they gave notice to the defendant, on the twenty fifth day of January, 1847, that Drury had not paid said note. The county court ruled, that the plaintiffs could not maintain their suit against the defendant upon said guaranty; whereupon the plaintiffs submitted to a verdict for the defendant, with leave to except to the ruling of the court; and the question is now before us upon the correctness of that decision.

1. The defendant insists, that, although the writing signed by him was not addressed to any particular person, yet that, when it had been presented by Drury to Stearns & Johnson, and they had given Drury credit upon the faith of it, its object and purpose had become complete and executed, and that thereafter the paper was to have the same legal effect and consequences, as if it had been originally addressed to Stearns & Johnson by the defendant.

If the purpose of the parties were such, that it might have been fulfilled by such use of the paper, or if the parties, at the time it was executed, might reasonably be supposed to have contemplated only a single purchase upon the credit of it, at some one particular house, this position of the defendant is doubtless correct. It becomes important, then, to ascertain and determine, if possible, the true object and intent of the defendant in executing the paper and delivering it to Drury; for the law aims in all cases, if possible, to give effect to and carry out the real designs of the parties in every species of contracts; and in no one class of cases have the courts gone so far for that purpose, as in those of mercantile transactions and securities.

For the purpose of ascertaining the intent of the parties in entering into any contract, courts will look at the situation of the parties making it, the subject matter of the contract, the motives of the parties in entering into it, and the object to be attained by it; and,

even in cases where the contract is reduced to writing, will allow all these circumstances to be shown by *parol* evidence, if the intent of the parties, upon the face of the contract, is doubtful, or the language used by them will admit of more than one interpretation. See *French* v. *Carhart*, 1 Comst. 96, and observations of JEWETT, Ch. J., p. 102; Chit. on Cont. 74, and notes. When, from the contract itself and all the surrounding circumstances, the true object and intent of the parties has been ascertained, courts will enforce the contract according to that intent, unless there be found in the way some stubborn, inflexible rule of law, absolutely requiring a different determination.

Considering the case in this view, what was the intention and understanding of the defendant, at the time he made and delivered the guaranty, or letter of credit, in question, to Drury? Drury was going to New York to purchase his usual fall supply of goods for the business of a country store, where goods of every variety and description are usually kept for sale. The defendant had been a merchant himself, and had formerly carried on the mercantile business in the same store then occupied by Drury, and must have known, that it would be impossible for Drury to have supplied himself with all the various kinds of goods, usually kept for sale in a country store, at any single house in New York, and that he must necessarily make purchases of goods at several different houses. The defendant, having been in business and known to be responsible, under this state of things gives to Drury a general letter of credit to carry to New York, addressed to no one, in which he agrees to be responsible for the goods Drury may purchase, more than he pays for. It would seem from the writing itself, and from the situation of the parties, impossible for any one to doubt, what the defendant really intended, when he executed the paper and delivered it to Drury. We are fully satisfied, that his object must have been, and that he intended, to give to Drury the necessary credit to enable him to purchase his fall stock of goods, of the various descriptions and varieties kept in a country store, at as many different houses, and of as many different dealers, as might become necessary for that purpose.

Is there, then, any imperative rule of law in the way of giving effect to this intention of the parties, and which will prevent these

Lowry et al. *v.* Adams.

plaintiffs, who sold goods to Drury upon the credit and faith of the defendant's letter, from holding the defendant liable, because another firm had previously trusted Drury with a bill of goods upon the credit of the same letter ? No case has been shown us, and the counsel for the defendant admits, that after a laborious search he has not been able to find any decided case, or statement by any elementary writer, that, upon a general letter of credit, like the present one, the signer could only be liable to the person who gave the first credit upon it. In the case of *McClung et al.* v. *Means*, 4 Ham. Ohio R. 193, the supreme court of Ohio seem to have held, that, upon a guaranty very similar to the present, different persons might give credit upon the faith of it,—though judgment in that case was given for the defendant, upon another point. We do not find, that this precise point has been adjudged by the courts, either in England or in this country; but in many cases we find *dicta* fully warranting the sustaining of such an action. See *McLaren* v. *Watson's Ex'r*, 26 Wend. 436, 437, by VERPLANCK, Senator; *Burckhard* v. *Brown*, 5 Hill 642. See, also, opinion of Judge STORY, in note to Story on Bills, 545 to 555; Story on Cont. 737, and cases cited in notes; Smith's Merc. Law 448, and Am. editor's note; *Lawrason* v. *Mason*, 3 Cranch 492; *Bradley* v. *Cary*, 3 Greenl. 233. Without taking farther space upon the question, we are not able to discover any principle, or authority, by which we are precluded from giving to the defendant's letter of credit the effect we are satisfied he intended,—that is, to make himself responsible to each and every person, who should sell goods to Drury, relying upon the faith and credit of it, and that he became liable to each in the same manner, and to the same legal effect and extent, as if he had given a separate letter to each.

2. The defendant also objects, that, inasmuch as the plaintiffs sold the goods to Drury on a credit, the defendant cannot be held liable upon his guaranty, because that did not authorize a sale on credit. We think this objection not well founded. The very object of the guaranty was to enable Drury to purchase on a credit; and if giving credit for the goods released the defendant, the guaranty was a mere nullity and amounted to nothing. No question seems to have been made in the county court, but what the credit was reasonable, and the usual and ordinary credit given to country mer-

chants for similar purchases in New York; and, as we view the case, this credit was just what the guaranty was intended to procure.

3. The defendant also insists, that he was entitled to notice of the acceptance of his guaranty by the plaintiffs within a reasonable time, and that the facts disclosed in the case did not show such notice. It appears to us, that by a fair construction of the bill of exceptions the case was turned in the county court upon the main question in the case, and not upon the ground of the want, or insufficiency, of the notice to the defendant, that his guaranty had been accepted and acted upon by the plaintiffs,—still, as the exceptions state the proof which was given upon the question of notice, and the point has been discussed by the counsel, we have taken that into consideration. Upon this question the counsel for the plaintiffs contend, that by the law of the state of New York no such notice is necessary to be given, to charge the guarantor, and that, as this guaranty was made by the defendant and sent to New York and there accepted by the plaintiffs, the law of that state must govern, and not the law of this state, which requires notice. Upon that question we give no opinion, as we are not satisfied, from the authorities produced, that no notice of acceptance is required in case of general guaranties, like the present.

Our law requires notice of the acceptance of guaranties in all cases, whether the same be general, or special. No specified time is fixed, within which this notice must be given; it must be within *a reasonable time*, taking into the account all the circumstances of the case. It is apparent, then, that this question can hardly ever be resolved into a mere question of law, to be decided by the court, but must generally be a question of fact, to be determined by the jury, under proper instructions. It appears, from the exceptions, that the plaintiffs gave notice to the defendant, that they had trusted Drury on the strength and credit of his guaranty and should look to him for payment, some time in the fore part of December, 1846, a little more than two months after the first bill of goods was sold to Drury, at which time the credit had a little more than half run. Nothing appears from the exceptions, that, at the time of this notice being given to the defendant, he made any objection to the notice, as being unseasonable, or that he expressed any surprise, on being

informed of such acceptance by the plaintiffs. Neither does the case show, that the defendant had surrendered any security he might have received from Drury, or that he was in any way injured in consequence of not having earlier notice from the plaintiffs. It appears affirmatively, upon the other hand, that Drury, at the time such notice was given, and for some time thereafter, continued to be engaged in his usual mercantile business, apparently solvent, and until his property was attached at the suit of the defendant. Upon these facts alone we do not think it could be properly assumed, as matter of law, that the notice was not reasonable, and that the defendant should be discharged in consequence,—but the questions hould have been submitted to the jury.

But we think, in view of the facts reported as having been shown at the trial, there was evidence, which might have been submitted to the jury, and from which the jury would have been warranted in finding the defendant had notice, that his guaranty had been accepted, at an earlier period of time than December. Drury was the defendant's son in law, had been his partner, and had just before this succeeded him in business. The defendant had given Drury a letter of credit, to enable him to procure goods in market; he went to New York, procured his goods, and returned with them into the immediate neighborhood of the defendant, and commenced selling them. Under these circumstances one could hardly doubt, but that the defendant would have become informed in relation to the amount of purchases made by Drury, for which he was liable; and his subsequent silence, when notified by the plaintiffs in December, goes far to corroborate the idea, that he already knew it. If he received information from Drury, that the plaintiffs had trusted him on the credit of the defendant's guaranty, it is equally as good, as if given directly by the plaintiffs. *Oaks* v. *Weller*, 16 Vt. 63.

In the same case of *Oaks* v. *Weller* the jury were charged, "that they might find such notice from the circumstances of the case, if they found them sufficient; and that the relative situation and connection in business, existing between Taylor and the defendant, which the evidence tended to prove, might be taken into the account." That charge was held correct by this court; and BENNETT, J., in delivering the opinion of the court, uses the following language, "Taylor was in the employ of Weller as his hired man,

placed in a situation, where they might have had frequent conversations about this matter, both having an interest in the result of the propositions made to Oaks, and no reason is shown, why Taylor should suppress from Weller any information, he might have received relative to it. In such cases most men would make it a subject of conversation, and it is exceedingly natural that they should."

Taking into view the relationship between the defendant and Drury, their former connection in business, and the responsibility the defendant had assumed for him by giving him credit in New York, one could hardly doubt, but that on his return the defendant would be informed, to what extent his guaranty had been used. These facts, taken in connection with the defendant's subsequent silence, when notified of the acceptance by the plaintiffs, we think were amply sufficient to entitle the plaintiffs to have the question of notice submitted to the jury.

The judgment of the county court is therefore reversed and a new trial ordered.