## M. NOYES & CO. v. IRA J. NICHOLS.

*Guaranty. Proof of notice of acceptance, &c. Construction and requirements of, &c., &c. Discharge of, &c.*

Testimony showing the object for which a guaranty was given, that the guarantor was present when it was delivered, and knew of a purchase of goods which the principal made under a contract contemplated by the guaranty, the guarantor's acquaintance with the business of the principal, and his general knowledge respecting the business transactions between the principal and the party to whom the guaranty is addressed, is admissible for the purpose of proving notice to the guarantor of the acceptance of the guaranty, and of the transactions of the other parties under it.

Notice to the guarantor of "*about the amount*" of the advancements which are made to the principal, on the credit of the guaranty, is all the notice which, in this respect, need be given.

Technical rules are not to be resorted to in the construction of a guaranty where the meaning of the parties is plain and obvious.

The defendant promised the plaintiffs that if they would furnish N. with merchandise "upon commission or otherwise," the defendant would be accountable for all N.'s contracts and engagements, and, if he did not fulfill them as agreed, the defendant would guarantee the payment thereof. *Held*, that the defendant was liable, under such a guaranty, for merchandise which the plaintiffs made a direct and absolute sale of to N.

*Held*, also, that, under such a guaranty, it was not necessary that payment should first be demanded of the principal, and notice of his default be given to the guarantor, for the purpose of rendering him liable.

Where a guaranty is absolute and binds the surety to the fulfilment of the principal's contract unconditionally and in general terms, no demand of payment of the principal and notice of his default is necessary to charge the guarantor.

The defendant informed the plaintiffs that N. was desirous of obtaining goods upon a credit, and guaranteed the fulfilment of N.'s agreements with the plaintiffs according to his contracts. A contract was thereupon entered into by which the plaintiffs agreed to furnish N. certain goods, to be paid for by him from time to time, but with a provision that the goods should be owned by the plaintiffs until they were paid for. *Held*, that this was a conditional sale upon credit, and within the fair scope of the guaranty.

The contract provided that N. might pay for the goods in certain kinds of barter, and at the expiration of the year return the goods on hand at a certain discount; and that his indebtedness under a former contract, for which the defendant was liable under a previous guaranty, was first to be paid. *Held*, that these stipulations, not operating to the injury of the defendant, did not prevent or discharge his liability; nor would it be affected by a want of notice of N.'s right to return the goods.

The plaintiffs, after the default of N., attached and sold his goods, including those which they had sold him, and applied the avails in part satisfaction of their claim; and they received from N. his note payable on demand, secured by mortgage, as collateral, and not to be credited until paid, and upon which nothing had been paid; and they had also purchased, in the name of a third person, a prior mortgage upon the same premises, and caused it to be foreclosed, but the time for its redemption had not expired. *Held*, that neither of these acts discharged or affected the liability of the defendant as guarantor.

Assumpsit upon two guaranties. The cause was, by the agreement of the parties, referred; and the referee reported a balance in favor of the plaintiffs of $1,005.77, including interest, together with the following facts found and decisions made by him.

The claims of the plaintiffs were founded upon two guaranties signed by the defendant, dated May 16, 1851, and June 17, 1852, and were for merchandise furnished T. W. R. Nichols, upon contracts signed by the plaintiffs and T. W. R. Nichols. The guaranties and contracts were as follows.

"*Burlington*, May 16, 1851.

"Messrs. M. Noyes & Co.: Gentlemen,—If you will furnish T. W. R. Nichols with merchandise and tin-ware, upon commission or otherwise, I will be accountable to you for all his contracts or engagements, as you and he may agree, and in case he does not fulfil them as agreed, I will guarantee the payment thereof.

"IRA J. NICHOLS."

"*Contract made and concluded, by and between Morillo Noyes & Co., of Burlington, Vt., on the first part, and Timothy W. R. Nichols, of Essex, Vt., of the second part.*

"The party of the first part covenant and agree to furnish, from time to time, a good stock of merchandise and tin-ware.

"The party of the second part covenants and agrees to and with the party of the first part to buy from the said first party all the merchandise and tin-ware the said second party may want, for the term of one year from the date hereof, at cash prices with interest from the date of the bills payable along, from time to time, as the said second party may collect his dues and obtain money; the indebtedness at no time to exceed twelve hundred dollars, except by special consent of said first party.

"And at the expiration of one year, the said first party agree, (if said second party so desire,) to receive back *all articles*, not damaged, which the said first party may have delivered, by the said second party making a discount therefrom of 10 per cent.

"If the said second party chooses to pay in any barter (such as the said first party are in the custom of receiving) the same is to be placed to the said second party's credit at its cash value.

"It is understood that the said Nichols is to continue in business for one year, and do all that he can advantageously.

"*Burlington, Chittenden County, State of Vt.*, this 19th day of May, 1851. "M. NOYES & Co.,

"TIMOTHY W. R. NICHOLS."

"June 17th, 1852.

"Messrs. M. Noyes & Co., *Burlington:* Gents,—T. W. R. Nichols being desirous of obtaining, from time to time, goods upon a credit, now I hereby guarantee to you the faithful and complete

performance and fulfilment of said Nichols' agreements with you, according to his contracts ; and I hereby waive all notice of your acceptance of, and your action under this guaranty.

"IRA J. NICHOLS."

"*Contract made and concluded this* 18*th day of June A. D.* 1852, *by and between M. Noyes & Co., of Burlington, of the first part, and T. W. R. Nichols, of Essex, of the second part.*

WITNESSETH;

"That the party of the first part, promise and agree to furnish a good assortment of goods, wares and merchandise, from time to time.

"The said second party, promises and agrees to purchase from said first party during the term of one year, all the goods, wares and merchandise the said second party may want, which is in said first party's assortment, at cash prices with interest from the dates of the respective bills ; and payable from time to time as promptly as payments can be made, said second party promising and agreeing to use his best endeavors to get ready pay, and collect all debts as soon as may be.  Said first party can limit the amount of the second party's indebtedness, and, it is hereby expressly agreed and understood that said first party shall own, till paid for, all goods, wares and merchandise delivered upon this contract as absolutely as if in their own possession.

At the expiration of one year, the said second party has the privilege of returning unto the first party, whatever goods, wares and merchandise there may be remaining, delivered under this contract, if not soiled or in any ways damaged, by the deduction of 10 per cent being made thereon.

"The second party can pay in barter, such as the first party is in the habit of buying, at any time, by making the same at cash prices.

"The said second party shall at all times keep up, in some good responsible company, a fair reasonable insurance upon the goods, wares and merchandise, for the benefit of the first party ; and shall continue said business efficiently and perseveringly for the term of one year, disposing of all the goods, &c., that the said second party can advantageously.

" It is agreed and understood, that the said second party's present indebtedness to said first party shall be paid before payments are applied upon this contract.

"M. NOYES & CO.,

"T. W. R. NICHOLS."

The guaranties were duly executed, delivered and accepted; due notice was given of such acceptance, and the contracts between the plaintiffs and T. W. R. Nichols were duly executed between the parties relying upon such guaranties; and the merchandise, furnished by the plaintiffs to T. W. R. Nichols, was furnished upon the strength of said guaranties.

The amount of merchandise furnished by the plaintiffs, under the first guaranty, was $1,429.77; to which add for balances of interest from the dates of the bills, $120.03, making the whole debit side of the plaintiff's claim upon the first guaranty amount to $1,549.80. The amount of credits.to apply, in the first instance, upon the first guaranty, was $1,555.57, leaving a balance of $5.77 to apply upon the debt accruing under the second guaranty.

The merchandise furnished by the plaintiffs to T. W. R. Nichols upon the second contract, and relying upon the second guaranty, was, after applying the balance of credit upon the first contract, $856.03.

A note of $600 was given by T. W. R. Nichols to the plaintiffs, not to apply in payment on the account, but merely as a collateral security, together with a mortgage of land in Essex, worth, over and above a prior incumbrance, about $300, to secure the note; but the note was not to be credited till paid, and, as nothing had been paid upon it, it was not allowed as a credit.

The defendant insisted, that, upon the first guaranty, he was entitled to immediate notice, whether the plaintiffs furnished the articles upon commission, or sold them to the principal. The plaintiffs did not give personal and express notice that they had accepted the first guaranty; but the defendant was at the plaintiffs' store, with his brother T. W. R. Nichols, when the guaranty was delivered to the plaintiffs, and the first contract executed; and a part of the goods were sold under such contract and guaranty, on that day, to T. W. R. Nichols, the defendant being in the store at the time and knowing of such sale. The defendant and T. W. R.

Nichols were brothers, lived near each other, the defendant being frequently in the store of T. W. R. Nichols, and having a general knowledge of his business; and the defendant was informed by his brother that the goods he sold were mainly obtained from the plaintiffs. T. W. R. Nichols did not sell goods before the contract was made with Noyes, and proposed to the defendant to go into business if the defendant would aid him in getting goods from the plaintiffs, and, to effect this object, the guaranty was given, immediately after which, T. W. R. Nichols went into business as aforesaid.

If evidence of the foregoing facts was admissible, in law, to prove notice to the defendant of the acceptance of his guaranty by the plaintiffs, the referee found that the defendant had notice of the plaintiff's acceptance of the first guaranty, and of their furnishing goods to T. W. R. Nichols, relying upon such guaranty, and that such goods were sold, and not furnished on commission.

The referee further reported, that he was not able to find that the written contract, dated May 19, 1851, was ever seen by, or shown to the defendant; but he did find that the defendant knew there was a contract between the plaintiffs and his brother, upon which the plaintiffs sold him goods, and the general character of their dealings under it. The defendant also insisted that he was entitled, under the first guaranty, to reasonable notice of the amount furnished from time to time, and of the amount of his liabilities at the end of the year, and, for want of such notice, was discharged. The referee found that no personal and express notice was given by the plaintiffs to the defendant of the amount furnished from time to time; but, from the relations of the parties, and the acquaintance of the defendant with his brother's business, as before stated, the referee did find that the defendant knew the plaintiffs were furnishing his brother goods from time to time, and had a general knowledge of about the amount of goods so furnished,—but no definite knowledge of the precise amount of his bills, and no notice from any one, at the end of the year, of the exact amount of his liability under the contract.

The defendant also insisted, that the plaintiffs' taking the $600 note, and the mortgage of all T. W. R. Nichols' real estate to secure the same, his changing the business (as he contended) un-

der the second contract to a commission business, and their furnishing goods under such second contract, to be mingled with the goods sold under the first contract, deprived the defendant of all power to secure himself, and discharged him from all liability on the first guaranty.

The referee found that the plaintiffs took such $600 note, payable on demand, and a mortgage of all T. W. R. Nichols' real estate to secure the same, as collateral security, merely, for his debts to them, but he did not find that the second contract changed the business to a mere commission business. The plaintiffs furnished the said T. W. R. Nichols with goods under the second contract, at their store in Burlington, and T. W. R. Nichols took them to Essex, and mingled them with his other goods there, but in so doing, he acted without any direction from, or privity with the plaintiffs, unless their knowledge of his intent made them privy to such acts; and the referee decided that the defendant was not, by any such acts, discharged from his liability on the first guaranty.

As to the second guaranty, the defendant insisted that he was, by its terms, only liable for goods "obtained upon a credit;" that the second contract did not provide for any credit, or vest any title, property or interest in the goods in T. W. R. Nichols, but merely gave him the custody of the goods, and the right to sell them on commission for the plaintiffs; that the defendant was only liable for goods sold to his brother, and did not guaranty that his brother should faithfully sell on commission, or account for such sales.

The defendant also insisted, that, although he waived all notice of the plaintiffs' acceptance of, and action under the second guaranty, still that the plaintiffs were bound, at the end of the year, and at the close of the transaction, to give him notice of the amount of his liability, and that no such notice was given; and the referee found that the plaintiffs did not give any express and personal notice of such amount after the close of the transactions, but did find, from the relations of the parties, and from the defendant's frequent presence in his brother's store, and knowledge of his business, and from being informed by his brother that he mainly purchased his goods of the plaintiffs, that the defendant had a general knowledge of about what was the extent of such indebtedness,—but did not know its precise amount, nor was ever informed, before this suit

was brought, of the precise amount. About a month or six weeks after the second year had expired, and before any offer to return the goods was made, a negotiation arose between the plaintiffs and T. W. R. Nichols, as to making a contract for another year. The plaintiffs delayed giving any definite answer whether they would or would not make such contract from time to time, for about two months,—advised him to replenish his stock by making purchases elsewhere, (which he did, to the amount of about $100,) and finally, without giving him any further answer or notice, attached all the goods in the store on his debt to them, accruing under such contracts and guaranties.

The defendant insisted that the stipulation in the second contract, that the indebtedness on the first contract should be paid before applying payments on the second contract, discharged the defendant from his guaranty; and, also insisted, that he was discharged from the second guaranty, because the goods furnished under the second contract were mingled with those had under the first contract; but the referee decided otherwise.

The defendant also insisted that it was the duty of the plaintiffs, at the end of the year, to have taken the goods into their own possession; and that, by omitting so to do, they caused them finally to be sold at a discount of $17\frac{1}{2}$ per cent from the prices charged, when, by taking them back, the discount, by the terms of the agreement, was only to be 10 per cent, thus causing the defendant a loss of $7\frac{1}{2}$ per cent.

The referee found that the plaintiffs did not, at the end of the year, take the goods into their possession, but that, on the 26th of October, 1853, they attached them in a suit against T. W. R. Nichols for his debt to them; that finally, by an arrangement made between the plaintiffs and T. W. R. Nichols, the goods were sold to one Sherwood at a discount of $17\frac{1}{2}$ per cent from the prices charged by the plaintiffs. But the referee decided that the plaintiffs were not bound, at the end of the year, to take back the goods into their possession, and that, the goods being attached, the sale to Sherwood was, under such circumstances, reasonable and beneficial to all the parties.

It appeared that there was a mortgage on the land in Essex, prior to the mortgage given to the plaintiffs, for about $126; that

the plaintiffs, in the name of one Vilas, paid the holder of the prior mortgage the amount due on it, took an assignment of it to Vilas, brought a bill of foreclosure in the name of *Vilas* v. *T. W. R. Nichols*, and got a decree of foreclosure, which would expire on the 30th of April, 1856. It also appeared that the premises mortgaged were worth about $200 more than the amount due by such decree. The defendant insisted that these acts of the plaintiffs were done to defraud the guarantor, and that he was thereby discharged; or, if not discharged, that the value of the premises over and above the prior mortgage should be applied in payment of the debt due the plaintiffs from T. W. R. Nichols.

But the referee did not find that the acts aforesaid were done to defraud the guarantor or to impair his rights; and that, as nothing had been paid on the $600 note, and as the equity of redemption had not expired, the value of the premises beyond the amount of the decree ought not to be applied on the debt due the plaintiffs.

Upon the report, the county court, November Term, 1855,— PECK, J., presiding,—rendered judgment, *pro forma*, for the defendant, to which the plaintiffs excepted.

*Peck & Harvey* and *J. Maeck* for the plaintiffs.

A guaranty is to be construed liberally so far as to ascertain its intent or latitude, *it being a commercial instrument.* Its intent or latitude having been thus ascertained, the given case must be clearly brought within it. In no other sense is the construction " *strictissimi juris.*" 3 Kent's Com. 124.

In ascertaining intent, doubtful language is to be taken most strongly against the guarantor. 7 Pet. 122, *Douglass et als.* v. *Reynolds et al.;* 12 Whea. 515, *Drummond* v. *Preston;* 12 East, 227, *Mason* v. *Pritchard;* 3 Whea. 148, *Lamp* v. *Barker,* note A, by Wheaton.

Notice of the fact of the plaintiffs' acceptance of, and action under the guaranty were proved by competent evidence.

Proof of any circumstances by which the guarantor was likely to get notice was sufficient. *Avilard* v. *Williams,* Chittenden Co., January Term, 1832, cited by the court in 11 Vt. 444, *Train & Co.* v, *Jones;* 13 Vt. 106, *Oakes* v. *Weller;* 16 Vt. 63, *same* v. *same;* 22 Vt. 160, *Lowry* v. *Adams.*

Notice of the amounts furnished, from time to time, or of the whole amount at the end of the year, was not requisite.

Such notice, during the progress of the dealings, would have impaired, by its inconvenience, the utility of the instrument. The guaranty being continuous, no principle of law has gone so far. 7 Pet. 126, *Douglass et als.* v. *Reynolds et al.*

By the English Law, notice of acceptance, in case of a guaranty for future credit, is unnecessary. The duty to give it is recognized in this state as necessary to produce mutuality of understanding. 13 Vt. 106, *Oakes* v. *Weller;* 12 Pet. 206, *Cunningham et al.* v. *Jones;* 7 Pet. 113, *Douglass et als.* v. *Reynolds et al.* In a continuous guaranty, the duty is satisfied by acceptance and notice, without notice of the extent. The mutuality then exists; the guarantor and principal are in privity; the latter is. a complete source of information, and the creditor may reasonably infer that the former improves himself of it.

If such notice is requisite, the referee has found it. He has found *actual knowledge of the substance of the claim.* It thus put him upon his guard. His want of further knowledge arises from a waiver to ascertain it.

If the first guaranty obligated the defendant, the clause in the contract of June 1852, did not affect the validity of the second guaranty. The defendant was liable under each. It was indifferent to him where the applications were first made. If he had a right to direct them, in omitting to do so, he left it to the parties. The agreement did not prevent his interfering at any time.

The contract of June, 1852, was within the second guaranty. It was one of sale, and on credit. It gave T. W. R. N. the right to sell while in possession. This was the object of buying. 22 Vt. *Lowrey* v. *Adams.*

The stipulation for the application of payment did not extend the time of payment under the first guaranty. It was reserving in the plaintiffs the right to have that done which T. W. R. Nichols could have *elected* to do. Nichols having the right to make the application in that way, their consenting to receive them was in pursuance of the terms of the old debt, as it was, and therefore was not the making of a new agreement as to him. It left the plaintiffs open to sue as before.

*J. B. Wheeler* and *F. G. Hill* for the defendant.

A surety is not held beyond the fair scope of his engagement. His liability is always *strictissimi juris*, and shall not be extended by *construction.* *McClusky* v. *Cromwell*, 1 Kernan 598; or by *implication*, 3 Kent 124; Burge on S. 42. *United States* v. *Boyd et als.*, 15 Peters 208; *Dobbin* v. *Bradley*, 17 Wendell 424.

The first guaranty is not *absolute.* It is for goods to be furnished " *on commission or otherwise.*" A fair construction of this guaranty is for goods to be sold on commission only; when a contract can be carried into effect by its terms which need no construction or extension by implication, it is the duty of the court to do so, and confine the duty of the one party and the undertaking of the other to those terms in the contract which are plain and need no construction; especially is this the case in a contract of surety; 1 Kernan 602.

" It is the duty of the individual, who contracts with one man on the credit of another, not to trust to ambiguous phrases and strained construction." 2 U. S. Cond. 423, *Russell* v. *Clark's Ex.*

If the court should conclude that the plaintiffs and T. W. R. Nichols might make a contract under the " or otherwise," which would be obligatory on this defendant, and that the terms of the contract were left wholly optional with the plaintiffs, then the plaintiffs were bound to give the defendant notice of how that option had been exercised; 6 Mees. & Wels. 442, *Vyse* v. *Wakefield;* 2 Amer. Leading Cases 59, 60, 61; 16 Com. Law 180, *Payne* v. *Ives.*

" It is the duty of a party taking a guaranty to put the surety in possession of all the facts likely to affect the degree of his responsibility, and if he neglects to do so, it is at his peril." 10 Eng. Com. Law 197, *Pidcock* v. *Bishop ; Craft* v. *Isham*, 13 Conn. 32.

The reasoning in 13 Vt. 110 & 111, *Oakes* v. *Weller*, sustains the same principle.

We insist " that a demand of payment should have been made of T. W. R. Nichols, and, in case of non-payment by him, that notice of such demand and non-payment should have been given in a reasonable time to the defendant; otherwise the defendant would be discarged from his guaranty." *Douglass* v. *Reynolds*, 7 Peters 113–126; *Craft* v. *Isham*, 13 Conn. 28; 12 Pick. 133, *Babcock* v. *Bryant.* 2 Am. L. Cases 66, 67, 68, 69; 18 Vt. 36.

The kind of notice found in the report will not do. If notice of any sort is required at the close of the transactions, then that notice should be certain and exact. 13 Conn. 41, *Craft* v. *Isham*.

If it is not required as soon in the case of a guaranty as in that of a negotiable note, it must be as certain when it does come.

The note of $600, taken from T. W. R. Nichols by the plaintiffs, with the receipt given therefor by the plaintiffs, and the stipulation in the second contract that payments thereunder shall be "from time to time as promptly as can be made;" and that such payments shall be made in satisfaction of T. W. R. Nichols' previously existing indebtedness, amounts to a contract for the extension of the time for the payment of such indebtedness, which discharges this defendant. 21 Vt. 38–44, *Austin* v. *Dorwin*.

Again, we say, that the acts of the plaintiffs, in taking a mortgage of T. W. R.'s real estate, and advancing their goods to be mixed with the goods on hand, for which the defendant was liable, (if liable at all,) so that he could not secure himself on either, and thereby putting all the means, which T. W. R. had, out of the power of the surety to secure himself on, discharges him. 8 Pick. 130.

If they intended to hold the surety, they should have left his real estate free and the goods free for him to secure himself upon. But as it was, he could not have meddled with them without making himself liable to them in trespass or trover. 12 Wendell 123–126, *Moore* v. *Paine*.

The second guaranty contemplates a sale of goods upon *credit*, but under the second contract no credit is intended, none is given.

If the plaintiffs intended to rely upon the second guaranty, they so varied the terms of the contract with the principal from the terms of the guaranty, as to discharge the defendant, or, rather, so that no liability ever attached to the defendant. 5 Wendell 203, *Coming* v. *Colt;* 2 Caines' Cas. in Er. 30; 6 Hill 540.

A guarantor is only liable according to the precise terms of his guaranty, and if the creditor makes an agreement with the principal inconsistent with the terms of the guaranty, no liability attaches. 17 Wendell 422, *Dobbin* v. *Bradley;* 10 Johnson 180, *Walsh* v. *Bailie;* 8 Wendell 512–516, *Wright* v. *Johnson;* 10 Com. Law 197, *Pidcock* v. *Bishop;* 4 Com. Law 72, *Glyn* v. *Hertel;* 2 Caines' Cas. in Er. 57–58.

It is a fraud on this defendant that the plaintiffs seek to make him liable for goods delivered under this guaranty when the avails of such goods were to be applied to the payment of a former indebtedness of T. W. R.   10 Com. Law 197, *Pidcock* v. *Bishop.*

The mingling of the goods and the accounts of all the transactions, under both guaranties and contracts, by the plaintiffs, in one comprehensive hotch-pot, was a fraud, in fact and in law, on this defendant, which discharges him, if ever liable.

We say, further, the attachment of the goods by the plaintiffs was a legal taking back of the same, so far as advanced under the last contract.

At any rate, attaching the goods, under the circumstances of this case, and then selling them at private sale, under an agreement with T. W. R., instead of a legal sale under the attachment, was a fraud on the rights of this defendant, 2 Caines' Cas. in Er. 35.

The purchase, by the plaintiffs, of the previous mortgage on T. W. R.'s real estate, in the name of Vilas, in the manner found by the referee in the report, was a fraud upon the defendant.  4 John. Ch. 130, *Hayes* v. *Ward;* 8 Pick. 122–129, *Baker* v. *Briggs.*

The opinion of the court was delivered by

BENNETT, J.    This is an action of assumpsit, founded upon two written guaranties, one bearing date the 16th of May, 1851, and the other the 17th day of June, 1852, copies of which are annexed to the report of the referee, and may be referred to. It is found that the guaranties were duly executed, and delivered to, and accepted by the plaintiffs, and that the defendant had due notice of such acceptance ; that the contracts between the plaintiffs and the principal, set forth in the report, were made in reliance upon the defendants guaranties, and the goods furnished upon the strength of them.   We have no doubt of the admissibility of the facts detailed in the report of the referee, to which reference may be had, to prove a notice to the defendant of the acceptance of his first guaranty by the plaintiffs, and of their furnishing goods to the principal upon the faith of such guaranty, by a sale, and, not on commission.   The cases of *Oaks* v. *Weller*, 16 Vt. 63, and of *Lowry et al.* v. *Adams*, 22 Vt. 160, abundantly show the admissibility of the facts reported by the referee, for the purposes for

which they were offered, and would seem abundantly to justify his inference from them.

In regard to the plaintiffs' claim, under the first guaranty, the referee says that he is not able to find that the defendant ever saw the written contract of the 19th May, 1851, between the plaintiffs and the principal, but he does find that the defendant knew there was a contract between them, upon which the plaintiffs sold the principal goods, and the general character of their dealings under the contract, and the referee says, that though there was no personal and express notice, given by the plaintiffs to the defendant, of the amount furnished from time to time, yet he does find, from the relation of the parties, and the acquaintance which the defendant had with his brother's business, as detailed in the report, that the defendant knew that the plaintiffs were furnishing the principal with goods, from time to time, and had a general knowledge of about the amount of goods furnished, though no definite knowledge of the precise amount of his bills, and no notice, at the end of the year, of the exact amount of his liability under the contract.

We will, in the first place, consider the original liability of the defendant, upon the facts proved, on the first guaranty. This letter of guaranty, addressed to the plaintiffs, says to them, " if you will furnish T. W. R. Nichols with merchandise and tin ware, upon commission, or otherwise, I will be accountable to you for all his contracts or engagements, as you and he may agree, and in case he does not fulfill them as agreed, I will guarantee the payment thereof." There can be no question but what this guaranty is prospective in its terms, and looks to a future operation of the principal with the plaintiffs, according to an agreement thereafter to be made between them, and by that agreement, made the 19th of May, 1851, the principal, among other things, agreed " to purchase of the plaintiffs all the merchandise and tin ware which he should want for one year," &c. It is a correct proposition, as laid down by the defendant's counsel, that a surety is not to be held beyond the fair scope of his engagement, and that presents the question whether the dealings of the principal with the plaintiffs are within the first guaranty. The referee has found a sale of the goods, delivered to the principal by the plaintiffs, and not a delivery to sell on commission, and there can be no doubt that the executory contract between

the plaintiffs and the principal of the 19th May provided for a purchase, and it is only necessary then to inquire, whether the guaranty, or letter of credit from the defendant to the plaintiffs, authorized a sale of the goods upon the strength of it; and of this, we think, there can be no serious question.

The request to the plaintiffs is, to deliver, to the principal, merchandize and tin ware, upon commission or otherwise, accompanied with the promise of the guarantor to be accountable to the plaintiffs for all the contracts, or engagements of the principal, as the plaintiffs and he should agree. The construction of this letter of credit is too obvious, we think, to admit of debate, and we have no occasion to settle the rule of construction in relation to guaranties, which are ambiguous, that is, whether the construction shall be in favor of the guarantor, rather than the guarantee. Technical rules of construction are not to be resorted to where the meaning of the parties is plain and obvious.

No doubt there are cases which go the length of holding that a contract of guaranty is one *strictissimi juris,* and is to be construed in favor of the guarantor, and to this effect is *Nicholson* v. *Paget,* 1 C. & M. 48 ; and see also *Mellville* v. *Hayden,* 3 B. & A. 593.

But in the case of *Mason* v. *Pritchard,* 12 East 227, the common rule of construction of contracts, was applied to a guaranty, and the construction was against the guarantor, and in the late case of *Mayer* v. *Isaac,* 6 M. & W. 605, the case in the 12th of East was approved of. See also *Hargrave* v. *Smee,* 6 Bing. 244, and *Drummond* v. *Prestman,* 12 Wheat. 515. If it was important in this case, it might well be questioned whether, in this respect, there is any good ground for making contracts of guaranty an exception to the general rules in regard to construction. It is sufficient, for this case, to say that the letter of guaranty needs no extension by implication, in order to bring the plaintiffs' case, as found by the referee, within the plain and obvious scope of the defendant's guaranty. That it gave a right or power to the plaintiffs to consign the goods to the principal, to sell on commission, or to make a right out sale of them to him, if the parties should so agree, is beyond a reasonable doubt.

It is said in argument, that if the contract of guaranty is held to be in the alternative, and to give to the plaintiffs and the prin-

cipal an option, either to deliver the goods, to sell on commission, or upon a sale, then the plaintiffs must have given the defendant notice, in what manner that option had been exercised.

We have no occasion to examine the soundness of this position, or even question-it. The referee finds, and, as we think, upon competent testimony, not only notice to the defendant of the plaintiffs' acceptance of this guaranty, and of their furnishing goods to the principal, relying upon it, but also, that such goods were sold, and not furnished on commission.

The defendant would hardly claim, since the case of *Oaks* v. *Weller*, in the 16 Vt., that such notice must come from the plaintiffs, necessarily.

We apprehend that the defendant had all the notice of the advancements made upon this guaranty, which the law can require. He knew the plaintiffs were furnishing goods to the principal from time to time, and had a general knowledge of about the amount of goods furnished. The object of the notice is to secure to the guarantor his rights, and means of protecting himself, and certainly, so far as the amount of his liability was concerned, if he knew about the amount, it was enough to put him on inquiry if he wished to know the precise amount, and it was all that was necessary for the security of the guarantor, and sufficient to enable him to act understandingly, as it respected his principal, either by recalling his letter of credit, or by requiring an indemnity from his principal, or by doing both, if judged advisable. In the case of *Douglas et al.* v. *Reynolds et al.*, 7 Peters 126, it was held, that under a continuing guaranty, the law did not require notice of successive advancements under it, from time to time, as made, and that it was enough if the guarantor had notice of their amount when the business was closed.

It is claimed in argument that, as the case does not show a demand of payment of the principal, and notice of non-payment to the defendant, in a reasonable time, the defendant is discharged from his guaranty. But we think this is not a case requiring, in this respect, any such action from the plaintiffs. The surety assumed to be accountable for all the contracts or engagements of the principal, as he and the plaintiffs might agree, and guaranteed the payment thereof, in case he did not fulfill them as agreed.

This is a direct and an absolute undertaking for the act of another. The addition of the words, " in case he does not fulfill them," does not alter the nature of the undertaking, or impose any duties on the plaintiffs, which would not exist without them. In *Smith* v. *Ide*, 3 Vt. 290, the words of the guaranty were, " Mr. Gilman says he has bought a pair of horses of you for $260, in sixty days. I will warrant him to pay according to his agreement." No demand upon the principal for payment, or notice of his default to the surety was held necessary to charge him. The same was held in *Train & Co.* v. *Jones*, 11 Vt. 444.

In that case the principal wished to purchase a quantity of hides, and the language of the guarrantor was, " I will stand responsible for the fulfilment of any contract the principal, or his agent shall make." In *Peck* v. *Barney*, 13 Vt. 93, the language was, " if said claims are not paid or secured by the principal, within six months from the date, I do agree to secure or pay the same."

In that case the court say that, " a person who stipulates for a thing to be done by himself or another, is bound to see it done, and that notice was necessary only of that which the plaintiff was to do." See also *Sylvester* v. *Downer*, 18 Vt. 35. Under the guaranty now before us, no act was required on the part of the plaintiffs towards getting their pay from the principal. They were only bound to receive it when offered to them. See *Williams* v. *Granger*, 4 Day 444. *Lent* v. *Padelford*, 10 Mass. 230. *Breed* v. *Hilhouse*, 7 Conn. 523. *Douglas* v. *Howland*, 24 Wend. 35. Under the decisions in this state, we think it is well settled that, in a case like the present, no demand of the principal was necessary to give a right of action against the principal, or the surety, and, of course, no notice of his default need be given to the surety ; and such, we think, was the common law. It is a common principle that, if an act is to be done by a third person, who is known, no notice need be given. See *Somersall* v. *Barnaby*, Cro. Jac. 267.

We, then, have no hesitation in holding, that the defendant would have been liable upon his first guaranty had not the principal's indebtedness for goods delivered under that guaranty been cancelled by his credits.

We will now examine the plaintiffs' case, under their second guaranty.

It cannot be questioned that the defendant's waiver of acceptance of this guaranty, and of the proceedings of the plaintiffs under it, are binding upon him ; *Bickford* v. *Gibbs*, 8 Cushing 154. It is found that the goods delivered to the principal, under the contract of the 18th of June, were delivered upon the faith of the second guaranty, but is claimed that the terms of that contract do not bring the plaintiffs' case within the fair scope of that guaranty. If such is the fact, most certainly the defendant cannot be charged upon it. But we cannot so view it. The guaranty, after reciting that the principal was desirous of obtaining, from time to time, goods upon a credit, binds the guarantor to a fulfilment of the principal's agreements with the plaintiffs, according to his contract. The contract between the plaintiffs and the principal, created a conditional sale of the goods delivered under it, and the provision in it, that the property of the goods should remain in the plaintiffs, until paid for, rendered it none the less a sale on credit. Though it was the object of the guaranty to enable the principal to obtain goods upon credit, yet the particular conditions and terms of the credit are purposely left with the principal to arrange with the plaintiffs. The guaranty is absolute in its terms, and as broad as it well can be, binding the defendant to a performance of the principal's contract, as thereafter to be made. We cannot see why the contract of the 18th of June is not within the fair scope of the second guaranty.

The principal might well agree that the title of the goods should remain in the plaintiffs till their price was paid, and the provision in the contract securing to the principal the right, at his election, of returning the goods which should remain unsold at the end of the year, at a given discount, or to turn in barter pay, are provisions for the benefit of the principal, and increase his facilities for cancelling his debt, and thereby exonerate the surety. Of this the surety cannot complain. The principal's contract contains an express agreement to purchase the goods, and, upon a conditional sale, the relation of debtor and creditor is at once created between the vendor and vendee, and it is as much a purchase upon credit, as if the sale had been absolute in its terms.

We apprehend that the defendant cannot complain of that provision, in the contract of the 18th of June, which provides that

payments shall be made for goods delivered, under the first contract, before any application shall be made on that one. The. defendant stood liable, on his first guaranty, for the goods delivered on that contract, and the payment enured to his benefit equally as if applied on the last contract. The defendant had no equitable lien upon the goods, which could give him a right to have application first made on the last contract, and it cannot be maintained, upon the facts in this case, that the provision was in fraud of the surety whether communicated to him or not. The case of *Pidcock et al.* v. *Bishop,* 10 Com. Law 197, is widely different from the present case. In that case the pig iron was sold to the principal debtor by the plaintiffs, at its market value, under a secret agreement that he should pay, in addition to that, 10s per ton, to one of the plaintiffs, upon an old debt which he owed him individually, and this, it is true, was held to be a fraud upon the defendant, who had guaranteed to the plaintiffs the payment of £200 value, to be delivered to the principal in Lightmoore pig iron. This, it was said, was a diversion of a portion of the funds of the vendee from being applied to discharge the debt, which he was about to contract with the plaintiffs, and render the vendee less able to pay for the iron supplied to him, and that the surety had a right to expect that the funds arising out of the iron sold would be applied towards discharging the debt, which he had become collaterally responsible for; and that the surety had a right to have been informed of all those facts, which were likely to affect the degree of his responsibility. In the case now at bar, there was no diversion of the funds to the injury of the surety, and the application is such as the law would have made, in the absence of any express agreement to the contrary.

Although the contract of the 18th of June provides that the respective bills of goods, purchased by the principal, shall be payable from time to time, as promptly as payments can be made, yet this provision is to be taken in connection with the one which provides for the payment of the old debt first; and the contract is so to be construed, that all its parts may stand, which is not difficult, the last provision simply qualifying the former.

It has been remarked already, that this guaranty is absolute, binding the surety to the fulfilment of the principal's contracts with

13

the plaintiffs, unconditionally, and in general terms. In such a case, no demand of payment of the principal, and notice of his default to the surety can be. necessary to charge him. By the effect of the waiver, no notice of the acceptance of the guaranty, or of the advances under it, was necessary.

The amount of the plaintiffs' advancements, under the guaranty, is a necessary part of, and is involved in their action under it. But, as matter of fact, it is found that the defendant had a general knowledge of about the extent of the advancements. He, however, by the waiver, was clearly to see to this, at his peril.

The fact that the goods purchased were commingled by the principal with others, (the plaintiffs knowing that such was his intention,) had no effect to injure the surety, and could not be in fraud of his rights. It did not lessen the principal's means to extinguish this debt, and the surety had no specific lien on the goods advanced under his guaranty, and, much less, that they should not be commingled with other goods.

It is claimed that it was the duty of the plaintiffs to have informed the defendant of that provision in the contract which gave the principal the right, at the end of the year, at his election, to return such goods as remained unsold, at a given rate of discount, and that because it does not appear that this was done, the surety, it is said, is discharged. But this is a provision over which neither the surety or the plaintiffs had any control, and could not compel the principal to elect to return the goods, and neither the plaintiffs or the surety had any legal or equitable right to look to a return of the goods unsold, under this provision of the contract as a special means of discharging the principal's liability, and we cannot conceive that an omission to make this provision in the contract known to the surety, operated as a fraud upon him. Besides, the surety might have well resorted to the principal, for whom he had undertaken, to learn the particulars of his contract, if he desired it.

The provision in the contract, that the goods bargained and sold should remain the property of the plaintiffs till paid for, in no way increased the risk of the surety, but gave the plaintiffs a further security; and an exercise of this right, by retaking the goods, if it existed under the whole contract taken together,

would be beneficial to the surety. No doubt the contract, so long as the goods remained in the possession of the principal, under it, clothed him with a power of sale. It can hardly be claimed that the surety could compel the plaintiffs to retake the goods. The most, as it seems to me, that they could claim, would be to be subrogated to this right in the place of the plaintiffs, upon his payment of the debts, and whether that right would exist, it is not necessary to inquire.

The attachment and the sale of the goods by the plaintiffs, is not what the surety can complain of. Though, under this guaranty, the plaintiffs were not bound to take active means to collect the debt of the principal, yet they had a right to do it, if done in good faith to the surety, and the referee finds that, under the circumstances of the case, the sale was reasonable and beneficial to all the parties. The plaintiffs were not to be compelled, by the surety, to sell the goods at public auction, against the agreement of the principal.

The $600 note was properly disallowed. It was a note of the principal, payable on demand, and was received as collateral security, under an express agreement that it was not to be credited to the principal till it was paid, and it is found nothing had been paid upon it. We think the surety has no more ground to claim an allowance of this note than the principal, or that he is released by the transaction. The note, being on demand, was no extension of time to the principal, by implication, and the plaintiffs were, at any time, at liberty to commence suit against the principal, the same as if the note had never been given.

Whether the surety would, upon the payment of the debt, be entitled in equity to the benefit of the note and the mortgage, given to the plaintiffs, is another question.

Though no precise time is fixed by the contract, for the payment of the balance of the principal's account, yet we think he was bound to pay it, at least, within a reasonable time after the close of the business, at the end of the year; and this suit was not commenced until long after the expiration of such reasonable time.

The purchase in of the outstanding mortgage which the principal had previously given on the premises, which he subsequently mortgaged directly to the plaintiffs to secure the $600 note, can

have no effect. Although the plaintiffs had obtained an assignment of it to Vilas, and obtained a foreclosure in his name, yet nothing had been paid upon it, and the equity of redemption had not then run, and upon these facts, it is clear that the surety was not entitled to any allowance. The value of the equity of redemption, under the first mortgage, was some $200 ; and this, in effect, passed to the plaintiffs as a security for the $600 note.

If, in the end, the title became vested in Vilas, under his decree, in trust for the benefit of the plaintiffs, it is not necessary to decide whether in equity he should hold the premises, for the benefit of the surety, so far as their excess above the amount of the first mortgage is concerned. It is clear that, at the time of the reference, no claim could exist, in law or equity, in behalf of the principal or surety, why the plaintiffs should be charged with the value of the equity of redemption acquired under their mortgage. The referee negates all fraud in the plaintiffs, or a design in them to impair the rights of the surety, and I am not aware of any general rule in equity, any more than at law, which compels a creditor to exhaust his remedy against his principal before he can go against the surety, unless the contract of suretyship shall require it.

Judgment of the county court is reversed, and judgment on the report for the plaintiffs for their damages and costs.