ERWIN BARKER *v.* JOHN ESTY AND WILLIAM ESTY, and AUGUS-
TUS GRAVES, Trustee.

The statutes of this State, relating to trustee process, do not extend to any other class of debts, or demands, than such as are the ordinary result of contract, either express or implied, creating a fiduciary relation.

Under the Revised Statutes of this state one cannot be held as trustee for money received by him from the principal debtor as usurious interest. It

Barker *v.* Esty et al. & Tr.

is not a " credit intrusted " to the lender by the borrower, within the meaning of the statute ; but the remedy for money so paid is rather a statutory redress for a virtual wrong, and, as such, a part of the administration of the corrective police of the country.

If a trustee has been held chargeable in the court below, and this court find the judgment erroneous, as the law *then* stood, the liability of the trustee may be examined, as affected by any change in the law subsequent to the hearing in the court below.

The intention of the legislature in enacting a statute can only be determined by the fair and natural import of its terms, with reference to the subject matter, and without reference to any traditional history of the occasion of its enactment, unless that result from some known state of embarrassment under the former law.

In the construction of a statute a conjunctive clause may be taken in a disjunctive sense, when it is obvious that such was the intention of the legislature.

The statute of Nov. 5, 1845, extending section four of chapter twenty nine of the Revised Statutes to whatever a trustee holds " against law and equity," cannot be so construed, as to render a person chargeable as trustee for money received by him from the principal debtor as usurious interest. The true construction of that statute is, that it so extends the construction of the section named, as to render a person chargeable, as trustee, for whatever, of the nature specified in that section, belonging to the principal debtor, he holds against law, *or* equity.

Trustee Process.    The trustee filed a general disclosure in the county court, December Term, 1844, denying that he had any credits or effects in his hands, belonging to the principal debtors. The plaintiff then filed interrogatories, inquiring of the trustee whether he had not received from the principal debtors money, as interest above the rate of six *six per cent. per annum* on money loaned ;— which interrogatories the trustee declined to answer, unless required so to do by the court. The county court,—Bennett, J., presiding, —decided *pro forma* that he must make answer; and thereupon the trustee admitted, that he had received from the principal debtors money, as interest above six *per cent. per annum* on money loaned, to an amount sufficient to pay the debt and costs in this case, besides his costs as trustee; and the county court, upon this admission, decided *pro forma* that he was chargeable as trustee, under the statute.    Exceptions by trustee.

Barker *v.* Esty et al. & Tr.

*E. D. Barber* for trustee.

I.  The trustee should not have been required to answer the interrogatories put to him :—

1.  Because no man is bound to admit that he has violated the law. *Boardman* v. *Roe*, 13 Mass. 104.   Cush. Tr. Proc. 95, § 228.   15 Mass. 127.   9 Pick. 145.

2.  Because this is an adversary proceeding as to him; and he is not bound to disclose the facts under which he received the money, and thereby furnish evidence to sustain the claim.

II.  The trustee cannot be held chargeable; because it does not appear that he has any *goods*, *effects*, or *credits*, belonging to the principal debtors, *intrusted*, or *deposited*, in his hands, or possession. The terms " goods," " effects," have the same legal signification, and mean *moveables*, as distinguished from real estate.   The term " credits " means indebtment, a debt, in its ordinary signification, as importing something due upon a contact.   It does not mean a mere right of action, to which the principal debtor may or may not resort, at his election.   *Fitch* v. *Waite*, 5 Conn. 117.   *Hoyt* v. *Swift et al.*, 13 Vt. 129.

The statute against usury is made for the benefit of a particular class of persons, the borrowers, to protect them from the extortion and oppression of the lender.   Doug. 670.   7 Conn. 409.   Cowp. 792.   9 Mass. 48.   The money paid as extra interest passes, therefore, to the lender, by virtue of a contract which is good against all the world, except the borrower ; and it is the property of the lender, unless the borrower chooses to rescind the contract and reclaim the money.   No other person can disaffirm it for him, so as to make the lender liable to refund.   15 Mass. 515.   13 Mass. 104.   8 Paige 639.   10 Ib. 583.   Cush. Tr. Proc. 36, 37.   5 Conn. 117.

III.  The statute having provided a particular remedy in such case, no other remedy can be pursued.

IV.  The enactment of the statute of Nov. 5, 1846, cannot affect this case.

1.  Because the case must be tried, in this court, by the law as it stood when the case was tried in the court below.   This court is to decide, whether there was error in the decision of the county court, *at the time it was made.*

2.  This statute does not vary the liability of the trustee.   It does

not alter the Revised Statutes; and it cannot be gathered, from the statute itself, that it was intended to have that effect.

*Briggs* and *Prout* for plaintiff.

1. The statute in reference to interest, if it has any bearing as determining the relative condition of the parties to a usurious bargain, makes the usurer a simple contract debtor; and such being his condition as to the principal defendants, the case should be sustained upon those general principles, upon which the remedy is founded. Rev. St. 366, § 4.

2. This case is within the usual test, determining whether one is trustee, or not, independent of any legislative provision modifying the rule, and which is according to the case of *Whitney* v. *Munroe,* 19 Maine 42,—that is, "whether the principal defendant has, or has not, a right of action against the supposed trustee." The same test, essentially, has been recognized by this court, in *Sargeant* v. *Leland,* 2 Vt. 280. *Hutchins* v. *Hawley et al.,* 9 Vt. 295. *Hoyt* v. *Swift,* 13 Vt. 129. *Hurlburt* v. *Hicks,* 17 Vt. 193.

3. But if these cases do not furnish a rule sufficiently broad to embrace the case at bar, then we contend that the statute of Nov. 5, 1845, determining the construction of the fourth section of the trustee statute, is amply sufficient. Acts of 1845, pp. 18, 19.

4. The trustee is bound to disclose, although he may be compelled to testify to facts, that have a tendency to subject him to pecuniary loss. *Ward* v. *Sharp et al.,* 15 Vt. 115. *Devoll* v. *Brownell,* 5 Pick. 448.

But it is said, that creditors have no right, under the statute, to recover the amount paid as usurious interest, as the statute gives that right only *to the person* making the payment. This is applying a rule of strict and literal construction. The statute is remedial, and, upon all rule, should be so construed as to extend, instead of restricting, the remedy given for those supposed evils, against which it is directed.

But the case of *Boardman* v. *Roe et al.,* 13 Mass. 104, is cited, to show that the creditors of a party cannot come in and compel him to disaffirm his own bargain against his consent. That case was decided upon the Massachusetts statute of 1784, which provided, that, if a greater rate of interest than six *per cent.* should be taken, the

person *offending* should *forfeit* the full value of the money and goods so lent, to be recovered by *qui tam* action, or by *indictment.* Under such a law the usurer could not be regarded as a *contract debtor* of the borrower, when he was liable to be informed against by any person, who should discover his *offence.* But usurious contracts are void as to the *excess* of interest paid, because the statute *prohibits* taking more than six *per cent.* Consequently the law requires no act of disaffirmance on the part of either party. *Nelson* v. *Denison,* 17 Vt. 73.

The opinion of the court was delivered by

REDFIELD, J. The first question to be determined in this case is, whether, under the Revised Statutes, the trustee can be held liable. That will depend upon the extension we give to the *terms* of the statute,—"Every person, having any goods, effects, or credits, of the principal defendant *intrusted* or deposited in his hands, or possession, or which shall come into his hands, or possession, after the service of the writ and before disclosure made, may be summoned as trustee."

It is obvious, that the terms used in this statute have no natural fitness to express a claim of the character named in this disclosure. It has often been held, in these cases, that the person summoned cannot be adjudged trustee, unless there exists a cause of action against him in favor of the principal debtor ;—certainly in general he is not liable under the term *"credits,"* unless such cause of action exists. But it by no means follows, that he is liable as trustee in every case, where the principal debtor might maintain an action *ex contractu* against him. For the statute only makes him liable upon "credits,"—and "credits *intrusted.*" This surely does not include every cause of action *ex contractu.* It would hardly be contended, I think, that money obtained from one by force, or fraud, or which was due in debt upon a penal statute, or which resulted from the sale of chattels taken by force and sold for money, could be esteemed "credits intrusted," within the fair construction of this statute ;— yet in all these cases an action of assumpsit, or debt, might be maintained,—*and for money.*

This statute has, in fact, long since received a practical and judicial construction, by common consent, in this State, and in many of

the other American States, and in England, where it exists in certain districts; and it has never been considered, that it extended to any other class of debts, or demands, than such as are the ordinary result of contract, either express, or implied, creating a fiduciary relation. It is the *fidei commissarius* of the civil law and the *factor* of the common law. In what sense, then, is the man, who, by taking advantage of another's necessities, has extorted money from him, to be esteemed literally and strictly his factor, trustee, or confidential depositary, or commissary?

Usury paid, under the existing statute of this State, is, by express enactment, liable to be recovered back " *by the person paying the same,*" in an action of assumpsit, declaring for money had and received, or goods, &c. This is the only penalty imposed upon the lender, the only redress given to any one. Can this, then, be fairly said to be a " credit intrusted" with the lender by the borrower? It seems to me such a construction would be forced and unnatural. If the borrower is viewed as the " oppressed party," " the slave of the lender," as he is denominated in the books, it is money *extorted* from him, and is no more a " credit intrusted" with the lender, than if it were taken by robbery, by trespass, by fraud, by gambling, or was deposited with a stake holder on a wager upon an election, or paid for illegal fees, or to obtain a bankrupt certificate,—in all which cases the money might be recovered back in an action of assumpsit; but no case can be found, I trust, where any such remedy as this has been given. But the recovery, in this form, of usurious interest paid has been denied in the case of *Boardman v. Roe,* 13 Mass. 104. And a recovery of goods, delivered for usurious interest, was denied in an action on book account in this state, on the ground that the statute having provided a remedy, it must be followed. *Allen* v. *Thrall,* 10 Vt. 255.

And we consider this remedy, given by our statute, as was held in that case, as the only remedy which exists in any such case. It is not a " credit," but a matter of punishment, so to speak, upon the lender, for a wrong inflicted, and of redress to the borrower, for an injury sustained,—a part of the corrective police of the country, having its foundation in a *supposed tort,* rather than any *trust,* or *credit.* If it were not viewed in this light, it would be treated as a gift, and no remedy would be afforded, more than for any other vol-

Barker *v.* Esty et al. & Tr.

untary payment; but it is upon the very ground, that the party paying is supposed to be under a kind of constraint, not to act freely, to be subject to a virtual duress of circumstances, so that the maxim *volenti non fit injuria* does not apply, that, any remedy whatever is given. For a court, then, to say that money, paid under these circumstances, is a " credit intrusted" with the lender, and that he holds the money, in that way, in trust for the borrower, or his creditors, involves too gross an absurdity to be seriously entertained;—and we do not understand, that the plaintiff's counsel expect to succeed in the suit upon this ground mainly.

It is not necessary to inquire, in this case, how far a remedy, for recovering usury paid, existed at common law. If one did exist,—which I should not be inclined to question here,—it was upon the ground, that the money was obtained by wrong, and was allowed upon the general principle, that all money so obtained may be recovered back in an action of assumpsit, and will not help this case. And we do not think it important to inquire here, whether this remedy for the usury paid is strictly personal, and can be enforced only by the party, in his lifetime. Actions have sometimes been sustained by the personal representative. But that will not affect the case. Nor do we esteem it important, whether the statute allows the party to recover only the *excess* of interest paid, or *all* the interest paid, or twice or ten times the interest or excess of interest paid, or the full amount of the money loaned,—as in the Massachusetts statute of 1784; it is none the less, in all these cases, a statutory redress for a virtual wrong, and, as such, a part of the administration of the corrective police of the country and more connected with the *criminal* than the *civil* administration of justice. It in no sense differs from the case of money lost at play, except that then the limitation of the action is one month, and in the present case there is no special limitation.

But, secondly, it becomes necessary to inquire how far this case is affected by the statute of November 5, 1845.

It might be a sufficient answer to this point in the case to say, that a court of error is only to determine whether error intervened *at the time of rendering judgment;*—to do which we are to look at the matter as the law *then* stood. This would have been conclusive in the case, had the judgment below been in favor of the trustee.

Barker *v.* Esty et al. & Tr.

We could not then have reversed that judgment, upon the ground of any *alteration* in the law since the rendition of the judgment. But here we *must* reverse the judgment, on the ground that it was erroneous, as the law then stood. We are, then, to render a proper judgment in the case. The whole case is before this court; and we have power, undoubtedly, to allow a repleader, as is often done in this court, or to remand the case for a more full hearing upon the facts, which, indeed, is seldom done, but would, no doubt, be done, upon its being shown that the trustee had received funds since his disclosure was filed. This has been done in other States, where the law is similar to what it is here in that respect. And if the trustee can be charged on the ground of an alteration in the facts, we do not see why he may not be charged on the ground of an alteration in the law, making him chargeable for what he was not before, with the same propriety.

What, then, shall be the effect of this statute, in regard to the liability of the lender to be charged as the trustee of the borrower for the excess of interest paid? There can be no doubt of the power of the legislature to make him thus chargeable. And when it is said, that this law was passed explicitly for this purpose, it is certainly not a little remarkable, that, if this were so, the legislature should have chosen to express themselves thus ambiguously. It is, indeed, not uncommon to express an unpleasant or an offensive truth, or one which is indelicate, by a circumlocution, or a metonomy, or some other figure of speech. But that a legislature, in enacting a law *for a specific object*, should choose to express a natural, common matter under the shadow of an unmeaning abstraction is certainly not easily accounted for. This mode of expression is sometimes necessary, indeed, when one wishes to include many particulars, whether known, or unknown, under a general provision; but that one should choose *general words* to express a *particular idea* is certainly past my comprehension. And to my mind it is doing violence to the common sense of the legislature, to say that this statute was enacted *expressly* for such cases as the present.

We can only judge of the import and intention of a statute *by its terms.* Any other rule would lead us into endless and fruitless conjecture and hopeless uncertainty. This statute must be judged of, as are all other statutes, by the fair and natural import of its terms,

with reference to the subject matter, and without reference to any traditional history of the occasion of its enactment, unless that result from some known state of embarrassment under the former law.

What, then, does this statute profess to do? Not to add any new provision to the trustee statute, but to fix the construction of one of its sections, and that the one which we have already transcribed into this opinion.   It provides, that *that section* "shall be so construed, as to extend to and embrace whatever any trustee may have in his hands, or possession, *which he holds against law and equity."*

It is obvious, that this statute must be taken in a sense *somewhat* more restricted than its terms *literally* import.   If every person sued as trustee were to be held liable for *all* that he holds *against law and equity*, it would lead to a somewhat extended examination, in most cases, and to a degree of agrarianism, which no other act of the legislature, so far as I know, would lead us to suppose they could have intended.

Nor will it be contended seriously, I think, that this statute can fairly be so construed, as "to embrace whatever any trustee may have [of the principal debtor's] which he holds against law and equity."   If this were so, it must include lands, as well as chattels, —and not only chattels which were deposited with the trustee, but also chattels and money, which the trustee had taken from the principal debtor *by force,* or *by stealth,* or *robbery.*   It would also extend to *all penalties,* which had accrued to the principal debtor, and, for aught I know, to all claims for damages, whether for breaches of contract, or for torts, not excepting cases of personal assault and of slander.   We should be sorry to give to any statute, upon this subject, such an extension, unless from the most obvious necessity, resulting from its terms and fair import.

Viewed in this light, it does not seem to me that there is any difficulty, or that there ever need have been any difficulty, in determining the fair construction of this statute.   It does not profess to add any new provision to the trustee statute, but only to fix the *construction* of the section first quoted.   That section will then stand the same, as if this construction had been incorporated into it.   It will then read, " Every person, having any goods, effects, or credits" &c. "*intrusted or deposited in his hands,*" &c., " *and which he holds against law and equity,*" may be summoned as trustee.   The statute of

1845 is not, that the trustee shall be *liable* for " whatever he holds against law, or equity ; " but that the fourth section of chapter twenty nine° of the Revised Statutes shall extend to "whatever he holds against law and equity." That must, of course, mean, " whatever [*of the things named in that section*] he holds against law and equity."

The only objection, which can be urged to this construction of the statute, it seems to me, is, that it does not affect the former statute, or, if it does, that it *restrains* its operation. If either of these results followed from the construction here adopted, it would not be at all conclusive against its fairness, but might, I admit, raise doubts in regard to it. The maxim, that a statute, or a contract, should be so construed *ut res magis valeat, quam pereat,* is but *one* of the acknowledged rules of construction, and these are all but modes proposed of approximating the truth ; and if all these rules of construction cannot prevail, we must choose those, which, all things considered, seem to make most for good sense and *probable truth.* But it is only by reading "law *and* equity," in the conjunctive, instead of the disjunctive, that this construction either *restrains* the operation of the former statute, or that it does not *extend* it.

But it is not uncommon, in the construction of a statute, to take a conjunctive clause in a disjunctive sense, when it is obvious such was the intention of the legislature. Such, no doubt, was the intention here. It will then include goods, effects, or credits, &c., which the trustee holds against *law or equity,*—whereas before, the section had, by judicial construction, been limited to cases where the principal debtor had a *legal* remedy. *Hoyt* v. *Swift,* 13 Vt. 129.

Whether the statute should be construed to extend to all cases, where the trustee might be made chargeable for goods, effects, or credits, *in equity,* it is not necessary here to determine. It is certain, that it will and must have the effect to remove a defence, which was very common in these cases before, viz., that the trustee was only liable in equity. But it is certain this statute will not extend that section, so as to embrace what is neither goods, effects, or credits ; and we have already shown, we think, that the claim made in this case is for neither goods, effects, or credits. And it seems to us, that, aside from the *private history* of this statute, no one would have given to it any more extended operation, than the one here given it. If the legislature desire to pass a law, making persons

liable as trustees in cases like the present, it is a very easy matter to do so. But if they are too delicate, or too timid, to do it *in so many words*, or, for any other reason, do not choose to do it, we do not choose to do it for them. We choose to have a *law* upon this subject, and then we will enforce it, *if we can*. But it is enough *for us*, to enforce such laws as *are* made to our hands, without usurping the proper functions of the legislature.

Judgment reversed, and judgment that the trustee is not liable.