KEITH, PECK & CO. *v.* J. S. DWINNELL AND Z. G. PIERCE.

*Guaranty. Payment. Notice.*

The defendants gave the plaintiffs a guaranty as follows: "Mr. Lyman Wilson wishes to buy stock for his shop and pay in six months or before. We will be surety for him for a sum not to exceed one hundred dollars." *Held,* that the plaintiffs were authorized to deliver stock to Wilson to the amount of $100. on the credit of the guaranty, and had a right to deliver the same from time to time within a reasonable time from its date.

After Wilson had received goods to the amount guarantied by the defendants, and the plaintiffs had declined to deliver more on the credit of the guaranty, he made arrangements with them to furnish him further supplies from time to time, and he agreed to pay them in bark and other property which he had on hand and should take in, and under this agreement continued to receive goods, which were charged to him on a new account. *Held,* that the plaintiffs were not bound to apply the property delivered to them under the new agreement in satisfaction of their claim against the defendants, though the agreement was made without the knowledge of the defendants, it not appearing that it was made in bad faith, or that the defendants were affected by it.

But there being a balance due Wilson at his death under the new agreement, it was properly applied by the county court in payment on the defendants' guaranty.

The sufficiency of notice to a guarantor of non-payment depends upon the circumstances of the case. In this case the notice of non-payment was held sufficient.

ASSUMPSIT upon a guaranty. Plea, the general issue. Trial by court at the Washington County September Term, 1864, PECK, J., presiding.

The plaintiff introduced a paper, signed by the defendants severally, which is in the following words:

"Messrs. KEITH, PECK & CO.:—Mr. Lyman Wilson wishes to

Keith, Peck & Co. *v.* Dwinnell et al.

buy stock for his shop, and pay in six months or before. We will be surety for him for a sum not to exceed one hundred dollars.

Signed,                                   J. S. DWINNELL,

Z. G. PIERCE.

East Calais, October 25th, 1861."

The signatures were proved to be the defendants' signatures respectively.

It appeared on trial that said Wilson, on the 26th day of October, 1861, delivered the paper to the plaintiffs at their store in Montpelier, and received of them on the faith of it the amount of the first item on the bill marked "A," $50.03, and subsequently from time to time down to the 14th of December, 1861, inclusive, received the amount of the other items on said bill, according to the dates of the items respectively, and made the payments thereon, as indicated by the credits on said bill, amounting to $15.04, and that the balance of said bill is still due to the plaintiffs, unless the facts hereafter stated amount in law to payment by Wilson.

It appeared by the testimony on the part of the defendants that a few days before the date of the guaranty one of the defendants proposed to Wilson to come to East Calais, where the defendants resided, and open a shop in his business as a harness-maker, and that Wilson assented provided he could get some one to aid him in obtaining credit, but not without such aid, as he was without means to procure the necessary supplies; that thereupon the defendants wrote and signed and gave him the paper in question. Wilson, on obtaining the first articles of the plaintiffs, opened his shop as contemplated in East Calais, within a few rods of the defendants, used the articles and such as he subsequently obtained of the plaintiffs in supplying his shop and carrying on his trade. It appeared that within a day or two after Wilson obtained the first goods, the defendants learned from him that he had obtained supplies from the plaintiffs to supply his shop on the credit of the guaranty they had given him, but it did not appear that they either inquired or were informed as to the amount. Wilson continued to carry on his business there until some time in July following, when he was taken sick and within a few days after died, insolvent. It appeared that Wilson in the spring before his death, and thence up to and at his decease, had a small

amount of attachable property, consisting of a horse, a small amount of stock in his shop, and a small quantity of bark, which would have been sufficient to have secured the balance now due the plaintiffs. The articles on said bill, marked "A," were never charged or credited to Wilson, but the account was kept directly between the plaintiffs and defendants, as it appears on the bill. About the date of the last charge on this bill, between that date, December 14th, 1861, and December 23d, 1861, and before the plaintiffs had sold or delivered anything more to Wilson, their bill then amounting to a little over $100., Dwinnell, one of the defendants, on being informed how the account stood, and all the facts pertaining to it, notified the plaintiffs they must not go on further, or deliver on account of that paper the amount of more than the $100.—the amount specified in it; that they only guaranteed the amount of $100.; that, as he understood it, he expected, as fast as Wilson paid, the first payments Wilson made would go to pay the first items, and so on, and claimed that the first hundred dollars Wilson paid should go to pay the hundred dollars mentioned in the guaranty. Dwinnell also told the plaintiffs on that occasion, that they, the defendants, did not expect the plaintiffs would charge directly to them. A few days after this Wilson wanted more goods, and the plaintiffs told him that the $100. guaranty was about exhausted, and that they could not let him have any more. Wilson then told the plaintiffs that if they would furnish him supplies for his store along from time to time, he would pay them for what they should let him have with what bark he had on hand, and what bark and other articles he should take in, and money as he could get it along from time to time. To this the plaintiffs assented, and thereupon under this agreement the plaintiffs commenced supplying Wilson on his sole credit, and opened a new account, charging the articles subsequently delivered directly to Wilson, and what he thereafter paid they credited him in the new account, as appears by the bill marked "B." This bill, debt and credit, accrued under this last agreement, the debt amounting to $116.35, the credit to $157.56.

The plaintiffs gave no further notice to the defendants of the default of Wilson in reference to payment, until just after Wilson's death.

It appeared from the testimony of the defendants, who were witnesses, that subsequent to the interview between the plaintiffs and Dwinnell, above stated, they saw that Wilson along from time to time, before his death, had bark which he sent off to Montpelier, but how much they did not know, and made no inquiry about it, but that they supposed the plaintiffs had it, and supposed sometime before Wilson's death that he had paid the amount which they guarantied, but that they never inquired of Wilson or learned anything from him in relation to it, and made no inquiry of the plaintiffs, or of any one, about it, except the inquiry made by Dwinnell, as heretofore stated. It appeared that in the settlement of Wilson's estate the probate court assigned all the property to his widow, according to the statute.

The defendants' counsel claimed: 1. That the guaranty was exhausted by the first delivery of goods under it, and that the defendants never became holden for any part of the account, except the first item, the $50.03. The court held that the plaintiffs had a right to deliver to the amount of $100. on the credit of the guaranty, and deliver the same from time to time within a reasonable time from its date, and that the first $100. of the debit side was delivered within such reasonable time. 2. The defendants' counsel claimed that the whole amount, that is, both bills, should be treated as against Wilson, and that the first payment should be applied to pay the first items of charge, and so on in that order, and that the whole amount for which the defendants ever became liable was, by such application, paid. The court held that this would be so, had there been no special agreement, but that the agreement between Wilson and the plaintiffs as to the dealings subsequent to the delivery of the $100. under the guaranty authorized the plaintiffs to apply the subsequent payments first to extinguish such subsequent account. 3. The defendants also insisted that the plaintiffs could not recover for the want of reasonable notice by the plaintiffs to the defendants of Wilson's default in payment. The court held the notice sufficient.

The court rendered judgment for the plaintiffs as follows: From the first hundred dollars of debt on the bill marked "A," the court deducted the amount of credits on that bill ($15.04) leaving $84.96, from which last sum the court deducted the balance due Wilson on

the subsequent dealings, and rendered judgment for the plaintiffs for this last balance, and interest from the expiration of the six months' credit. To the rulings and judgment of the court the defendants excepted.

*Redfield & Gleason,* for the defendants, maintained, 1st, that the guaranty was only for Wilson's *first purchase for one sum. Ray* v. *Graves,* 19 E. C. L. 82 ; *Rogers et al.* v. *Warner et al.,* 8 Johns. 119 ; *White* v. *Reed,* 15 Conn. 456 ; *Hall* v. *Rand,* 8 Conn. 560 ; *Whitney* v. *Grout,* 24 Wend. 82 ; *Thaxter* v. *Bugbee,* 5 Cush. 221. II. Wilson's first payments should extinguish his first purchases. 1 Story's Eq. Jur. §459, (a,) § 460. III. The subsequent arrangement entered into between the plaintiffs and Wilson, without the knowledge of the defendants as executed by them does not vary the application of the payments *in law. United States* v. *Kirkpatrick,* 6 Curtis, 244, (see page 250.) IV. This private agreement was a fraud upon the defendants. *Pidcock* v. *Bishop,* 10 E. C. L. 197 ; 2d Am. L. C. p. 385 ; Chitty on Con., p. 527–8–9–3a ; *Stone* v. *Crampton,* 35 E. C. L. 57. V. *The defendants were entitled to notice of non-payment.* When the debt fell due in April, 1862, Wilson had property. Had the defendants been notified that the same was unpaid they could have indemnified themselves, and by *this neglect of the plaintiffs* for a period of *over four months* the defendants have been deprived of all remedy against Wilson and all opportunity to save themselves from loss. *This fact alone is fatal to the plaintiffs' case.* Parsons on Con. vol. 1, p. 514 ; *Howe* v. *Nichols,* 22 Maine, 175 ; *Wilds et al.* v. *Savage,* 1 Story C. C. R. 23 ; *Louisville Manf. Co.* v. *Welsch,* 18 Curtis, 460 ; *Douglass* v. *Reynolds,* 7 Peters, 117, (10 Curtis, 416) ; *Clark* v. *Remington,* 11 Met. 361 ; *Beebe* v. *Dudley,* 6 Foster (N. H.) 249 ; *Sanford* v. *Norton,* 14 Vt. 228.

* *O. H. Smith,* for the plaintiffs, insisted, 1st, that the defendants were informed of the plaintiffs' acceptance of their guaranty, and had all the notice that the law required. 2d, that the defendants were not entitled to notice of non-payment by Wilson. It is a well settled rule of law, that when one stipulates for a thing to be done, by himself or a third person, he is bound to see it done. He is entitled to notice only of that which the *plaintiff* was to do. *Peck* v. *Barney,* 13 Vt. 93. The notice given by Wilson of the plaintiffs'

Keith, Peck & Co. *v.* Dwinnell et al.

acceptance of the defendants' guaranty was sufficient. *Oaks* v. *Weller*, 16 Vt. 63. 3d, that the guaranty was not exhausted by the first delivery of goods under it. 4th, the two contracts made by Wilson being separate and distinct, the defendants have no right to claim any thing but the balance due Wilson under the second contract in reduction of their liability under the first contract. *Sturges et al.* v. *Robbins*, 7 Mass. 301. 5th, that the written contract that the defendants would be sureties that Wilson should pay for the goods in six months, was an absolute engagement that he should pay, or that the defendants would make the payment. Therefore, on failure of payment at the time it fell due, the defendants became fixed with the debt, without reference to any demand on Wilson, or notice to themselves. *Smith* v. *Ide*, 3 Vt. 290 ; *Train & Co.* v. *Jones*, 11 Vt. 444 ; *Peck* v. *Barney*, 13 Vt. 93 ; *Sylvester* v. *Downer*, 18 Vt. 32 ; *Noyes & Co.* v. *Nichols*, 28 Vt. 175 ; *Lent* v. *Padelford*, 10 Mass. 229 ; *Campbell* v. *Butler*, 14 Johns. 349 ; *Douglass* v. *Howland*, 24 Wend. 35 ; see opinion of the court from page 48 to 52 ; *Williams* v. *Granger*, 4 Day, 444. 6th, that the writing signed by the defendants was a continuing guaranty, or at all events until $100. worth of goods were delivered under it. *Rassley et al.* v. *Bailey*, 5 Conn. 149 ; *Walton et al.* v. *Mascoll*, 13 Meeson & Welsby, 452 ; Fell on Guaranty, 229.

The opinion of the court was delivered by

WILSON, J. 1. It is insisted by the defendants' counsel that the guaranty was exhausted by the first delivery of goods under it, and that the defendants never became holden for any part of the amount, except the $53.03. The inducement to the guaranty is fully expressed in the instrument. When a contract is reduced to writing and its language is doubtful or susceptible of two senses, that is to be taken which would give effect to the contract according to the intent of the parties. The situation of Wilson, for whose benefit the guaranty was executed, the language of the guaranty, and the object to be attained by it, show what must have been the understanding of the parties. The defendants in their guaranty say: " Mr. Lyman Wilson wishes to buy stock for his shop and pay in six months or before. We will be surety for him for a sum not to exceed one hundred dollars." There is nothing in the guaranty which shows that

stock to the full extent of the obligation should be obtained at a single purchase. Wilson might not want the whole amount at one time, or the plaintiffs might not be in a situation to deliver it; and we think it could not have been contemplated by the parties, as a condition on which the defendants' liability to the extent of $100. should attach, that the whole amount should have been delivered at one time. The plaintiffs were authorized to deliver stock to the amount of $100. on the credit of the guaranty, they had a right to deliver the same from time to time, within a reasonable time from its date, and it appears that the stock to the extent of the guaranty was delivered within such reasonable time.

2. In regard to the application of payments we think the rule adopted by the county court is correct. The general rule that the first payment should be applied to pay the first items of charge is not applicable to this case. It appears that Wilson desired further supplies for his shop, and made arrangements with the plaintiffs to furnish them. He agreed to deliver, and from time to time did deliver, to the plaintiffs bark and other property for which they agreed to pay him in goods. It was under that agreement that the balance on the new account from the plaintiffs to Wilson accrued. That agreement was wholly distinct from the contract out of which the defendants' liability arose, and the plaintiffs were not bound to apply such property as was named in the new agreement in satisfaction of their claim against the defendants, which had already become a money debt. It is urged by the defendants that the new agreement, having been made without their knowledge, operated to their prejudice, by reason of which they claim they were released from their obligation. The new agreement, between Wilson and the plaintiffs, was in its inception nothing more than a proposition on the part of Wilson to the plaintiffs to buy of them goods, and pay the plaintiffs for the goods in the kind of property named. It did not contemplate that Wilson should deliver property in advance of receiving the goods. It was at most a mere offer on the part of Wilson to pay for the goods at the time he received them, in such property as he then named to them that he would procure. It was entirely optional with Wilson, as well as with the plaintiffs, whether they would even commence trading under that arrangement, and it became oper-

ative only as an agreement as to the manner of payment for the property or goods, which either party might thereafter voluntarily purchase of the other. There is nothing in the case which shows that the agreement was made in bad faith, or to avoid any right or debt of the defendants, and it does not appear that the agreement lessened the means of Wilson for paying his debts, nor does it appear that the defendants were in any manner affected by it. The balance due from the plaintiffs to Wilson for the property delivered was payable in goods. It is obvious that he could not have compelled payment of that balance in money, nor an application of it upon the defendants' guaranty without proof of a demand for the goods and neglect to deliver them. The county court treated the balance due Wilson for the property as an equitable claim in favor of the defendants, and allowed it as payment on their guaranty, which was all the defendants could reasonably claim.

3. The defendants had due notice of the acceptance of their guaranty by the plaintiffs, and of the delivery of goods on the credit of it. The sufficiency of notice to a guarantor of non-payment must depend upon the circumstances of the case. The defendants and Wilson then resided in the same village, and the plaintiffs resided in another town. At the date of the guaranty, Wilson was making arrangement to open a shop and commence business in the village where the defendants resided. He had received assurances from the defendants that they would assist him in the purchase of stock. They were acquainted with his circumstances, and could easily obtain information as to his progress in business and as to his means of paying his debts. In December, 1861, the defendants had notice that goods to the full amount of their guaranty had been delivered to Wilson upon their credit. They also had notice at that time that the plaintiffs had charged the goods directly to them, to whom the plaintiffs should look for payment. Wilson from that time to the period of his death continued to carry on the business in the same village in which the defendants resided, and it would seem they must have had better means than the plaintiffs had of obtaining information as to the ability of Wilson to pay the debt. Whether Wilson at the expiration of the six months from the date of the guaranty had property upon which the plaintiffs could have secured their claim

does not appear, but it does appear that from sometime in the spring of 1862 to and at his decease he had the required amount of property for that purpose. The defendants were not, by any act or declation of Wilson or the plaintiffs, kept in ignorance of the non-payment of the claim. The fact that Wilson sent bark to Montpelier would hardly justify the conclusion that it was delivered to the plaintiffs on the defendants' guaranty, when the defendants had reason to believe that Wilson continued to obtain supplies for his shop of the plaintiffs. There is nothing in the case which shows that the defendants sustained any loss or damage in consequence of the neglect of the plaintiffs to give formal notice, at the time the guaranty fell due, of its non-payment. We think, under the circumstances of the case, the county court could properly find that the notice of non-payment was sufficient. The facts found by the county court in respect to this branch of the case render it unnecessary for us to discuss the subject of notice to a guarantor, as involved in many of the reported cases.

Judgment affirmed.