BANK OF NEWBURY *v.* SINCLAIR & a.

SAME *v.* PIERCE.

SAME *v.* QUIMBY.

Under a written guaranty, by which the guarantor agrees to be responsible for a certain indebtedness of the principal that may be incurred before a certain day, notice of the acceptance of the guaranty is implied, and no notice of the principal's default is necessary.

The right to recover money paid for usury is personal to the party paying it, and another party, collaterally interested, can take no advantage of it in a suit against him.

A party intrusted with another person's note, and authorized to negotiate it and use it for his own benefit, in the absence of any express direction by the latter, may make such a contract with a bank concerning it as he sees fit; and his subsequent declarations as to the disposition of the note are admissible in evidence, in a suit by the bank against the maker of it.

In such a case the bank-books may be evidence on the question of the disposition of the note.

The defendants in the second and third actions are also defendants in the first. Facts found by an auditor.

The first action is assumpsit on a written guaranty. January 22, 1876, the defendants guaranteed all sums of money that the defendants Sinclair and the Waumbek Lumber Company, by Sinclair as treasurer, or either of them, might have from the plaintiffs, or any indebtedness that Sinclair or the lumber company, or either

of them, might incur to the plaintiffs on or before March 1, 1878, not exceeding $12,000 at any one time. February 8, 1876, the bank loaned Sinclair $12,000, and took his individual promissory notes therefor, with the understanding on the part of the bank that the guaranty was held as security for this loan.

March 1, 1878, the lumber company owed the bank more than $12,000, incurred after the date of the guaranty. January 24, 1877, Cummings, the president of the bank, received of Sinclair for the bank, notes of the lumber company and of A. T. & O. F. Barron, amounting to $12,250, advancing to Sinclair at the same time $5,500, leaving a balance of $6,750. As a part of this transaction, Cummings gave Sinclair a receipt for the $12,250 "to apply on his notes and to pay my check of this date for $5,500." At this time Sinclair had overdrawn on the bank to the amount of $10,689.19, which was charged to his account. February 17th, the bank entered the balance of the notes named in the receipt ($6,750) to Sinclair's credit. When the receipt was given, the only notes that Sinclair had in the bank were the $12,000 note of February 8, 1876, and two notes of $1,500 each, dated January 15, 1877, on four months, one payable to the order of Pierce, the defendant in the second action, and the other to the order of Quimby, the defendant in the third action, which actions are brought for the recovery of the amounts due on those two notes.

Evidence was received by the auditor in explanation of the receipt above referred to, and he finds that the bank did not consent to apply the $6,750 on Sinclair's notes, but did apply it on his overdrawn account, and that no immediate application of any part of this money was ordered by Sinclair on his notes.

There was no evidence of any formal notice by the bank to any of the signers of the instrument of guaranty that they had accepted it, or had advanced money on its credit. At the date of the guaranty Sinclair was in visible possession of property more than sufficient to secure $12,000, and so continued till about January, 1878, since which time he has been insolvent.

The contract of guaranty was made, and to be performed, in Vermont, as was also the Quimby note.

In the action against Quimby, it appeared that Sinclair, having put the note in suit into the bank, paid the bank some $33 as extra interest over and above six per cent. upon it, and Quimby claimed that he was entitled to be credited with that sum on the note; which claim the auditor denied. Quimby also claimed that the contract was that this note should be held as collateral security for a $3,000 acceptance of M. C. Noyes & Co., which had been discounted by the bank to Sinclair, and that this acceptance having been paid, he was not liable on the note. Sinclair testified that this was substantially his understanding of the matter. Cummings testified that he had several conversations with Sinclair in regard to this note, and, subject to Quimby's objection, he was

allowed to testify that Sinclair never claimed, in any of these conversations, that the Quimby note was held as collateral to the Noyes acceptance. Mr. Leslie, the plaintiffs' cashier, was allowed to testify as to any connection between the Quimby note and the acceptance while the latter was in the bank, stating that the collection-book of the bank did not show that this note was held as collateral, and that they put marks on notes held in that way, which did not appear on this note. The auditor found for the plaintiffs in this suit.

*Bingham, Mitchell & Batchellor*, for the defendants.

I. The guaranty in the case at bar was one for a future operation. How much money might be advanced on the strength of it could not be known in advance. Sinclair would perhaps be presumed to know how much was advanced to him. While agent for that company, having charge of this class of its business, he may have been chargeable with knowledge of the amount loaned them. The co-guarantors had no notice of the amount that had been advanced on the guaranty until after March 1, 1878, and after Sinclair had become insolvent. None of the agents of the bank seriously interested themselves in the matter until the last of June, 1878. There is no presumption that can alone charge one of those co-guarantors with the knowledge possessed by another of them as to the fact or extent of loans under the guaranty. There was nothing in the notice of the transactions that would give any other parties than the bank, and perhaps the company and Sinclair, any knowledge of what had been done, or would be claimed, under that instrument. This was not a promissory note, to which these parties are to be held as makers. It was precisely what it purports to be—a guaranty. The words "jointly and severally" describe the relations of the guarantors *inter se*, with reference to the liability incurred. Those terms cannot change the significance of the word "guaranty," or give it anything more or less than its ordinary and well-understood legal significance. The rights of a guarantor are familiar and well settled. He is entitled to what amounts to a notice of an acceptance of the guaranty, and of the amount advanced on the guaranties. He has the right to know what the acceptor of the guaranty expects of him, in order that he may take security or indemnity from the party in whose favor he has assumed the liability. He must have that opportunity. This notice must be given in a reasonable time, and that time will be reasonable which secures to the guarantor all rights and means of protecting himself. *Craft* v. *Isham*, 13 Conn. 28; 1 Pars. Con. 501; *Clark* v. *Remington*, 11 Met. 361; *Howe* v. *Nickels*, 22 Me. 175.

All the essentials of the notice to which these defendants were entitled were within the information of the plaintiff from the outset of the business. The plaintiffs were bound under the law

to give the notice to the defendants. Having failed to do this until all possible opportunity for the guarantors to indemnify themselves had been lost, the bank must bear the penalty for its laches.

II. Sinclair's statement and Cummings's receipt, as found by the auditor, are to the same effect. The $12,250 received in notes, January 24, 1877, are to be applied on Sinclair's notes and his check of that date. It was a particular check, not any number of checks. It was a check, not the checks. A check is not a note. That specification of the check on which the application was to be made was so specific and distinct that there is no possible opportunity for a mistake as to what the parties intended. It is a case where the expression of the one excludes the other. After that one check had been met, the balance must be applied according to the terms upon which the $12,250 of January 24 was received. It is in the absence of directions from the depositor that the bank could have any option about the application of the payment. There can be no question as to the authority of Cummings to stipulate for an application, such as his receipt estops him to deny that he agreed to make. The plaintiffs are bound by the agreement to apply the balance over the $5,500 on the notes, and the guarantors must have the benefit of such a disposition of that fund.

*Leslie & Rogers* and *Ladd*, for the plaintiffs.

The contract declared on, and upon which this action is predicated, is an absolute and joint and several promise and undertaking by its very terms and *hæc verba*. It is signed and executed by the defendants, Sinclair and the Waumbek Lumber Company, as well as the other defendants, and the case shows, and the report finds, that the contract was delivered to the plaintiffs, and the money received upon it, by one of the joint and several promisors and absolute guarantors; therefore no notice is required to be given of its acceptance by the plaintiffs to all of the defendants. The defendants are all jointly and severally principals, *quoad* the plaintiffs, and the contract being delivered to the plaintiffs, and the money received upon it by one of the signers, makers, and joint and several promisors. the presumption of law is, that all the defendants had full and complete knowledge of its acceptance by the plaintiffs, and the amount of the defendants' liability upon it, which was limited not to exceed $12,000 at any one time. The case of *Maynard* v. *Morse*, 36 Vt. 617, is decisive of the case, and is the law of Vermont upon this branch of the case. That the word "guarantee" is used instead of the word "promise" makes no difference, because the term "guarantee the payment" has the same meaning as "promise to pay," and this contract is just as much an absolute promise as if the word "promise" instead of "guarantee" had been used. Sto. Prom. Notes 682, and note 1, and cases there cited.

And surely the paper, being an absolute and joint and several

promise, and binding upon all its signers and makers alike, and delivered to the plaintiffs, and the money received by one of the joint and several principals and makers thereof, is sufficient notice to all of the defendants of its acceptance, and the amount advanced by the plaintiffs upon it, which was limited, and not to exceed $12,000 at any one time. This is an absolute promise, undertaking, or guaranty. "One who stipulates for a thing to be done by himself or another is bound to see it done." When the terms of the guaranty are that the principal shall pay, or that payment shall be made, it is an absolute undertaking, and no demand of payment of the principal, and notice of his default, are necessary to charge the guarantor. *Smith* v. *Ide*, 3 Vt. 290; *Train* v. *Jones*, 11 Vt. 444; *Sylvester* v. *Downer*, 18 Vt. 35; *Noyes* v. *Nichols*, 28 Vt. 159; *Woodstock Bank* v. *Downer*, 27 Vt. 539. To the same effect are the New Hampshire cases. *March* v. *Putney*, 56 N. H. 34; *Beebe* v. *Dudley*, 26 N. H. 249; *McDougal* v. *Calef*, 34 N. H. 534; *Simons* v. *Steele*, 36 N. H. 73; *Batchelder* v. *Wendell*, 36 N. H. 216.

The contract is just as strong and absolute, and just as binding upon all the defendants, and as principals too, as if the defendants had made their joint and several promissory note, and procured the plaintiffs to discount and advance $12,000 upon it. The contract here was not an offer or mere overture to guarantee the transactions of Sinclair and the Waumbek Lumber Company, but it is an absolute and unconditional undertaking and promise to pay the plaintiffs the amount of the indebtedness of Sinclair and the Waumbek Lumber Company, or either of them, incurred on or before the first day of March, 1878, not to exceed the sum of $12,000 at any one time.

Again: if demand of payment of the principal, and notice of his default, or the plaintiffs' acceptance of the guarantee and advancement of money, and credit given upon its strength, were by law necessary, then we would say that the facts found and reported by the referees are sufficient to give and charge, all and singular, the joint and several makers of this contract with notice of such facts. Notice to one joint and several promisor and maker is notice to all.

As to the claim made by the defendants before the auditor, in regard to the application of the Waumbek Lumber Company's notes and Barron notes, delivered by Sinclair to Cummings, January 24, 1877, we claim that no other application should be made than was made by the plaintiffs, as reported by the auditor. The bank credited the notes to Sinclair upon his overdraft, and we insist that in the light of all the facts found and reported by the auditor, by this transaction Mr. Sinclair was in fact providing for this overdraft, that the bank so understood it, and credited the same upon it. This is the only rational view of the case and facts. And we insist that the words "his notes," used in Cummings's receipt, were intended to mean, and in fact do mean when considered by all the facts and surrounding circumstances of the case,

Sinclair's "paper checks or notes," upon and by which he procured this large overdraft. "Checks," in such a case of overdraft as this was, may as well be called "notes" as "checks." They were Sinclair's obligations: consequently the wording of this receipt is ambiguous, and can and ought to be construed by the light of surrounding facts and circumstances, as reported by the auditor, to mean the paper or checks covering this overdraft made on that day.

Both the Pierce and Quimby notes were drawn upon four months' time, and were at the date of this transaction only nine days old, and such application upon them is improbable therefore; so that the only other note which Sinclair had in the bank at that time, except and aside from those covering his overdrafts of that date, was the $12,000 note given upon the loan made by the plaintiffs to Sinclair, dated February 8, 1876, and immediately after the guaranty was made and covered by it. There is no pretence that Sinclair, at the time he delivered to Mr. Cummings the Waumbek Lumber Company's and Barron notes, directed that application of them should be made on any particular indebtedness; and the plaintiffs had the right to apply them, as they did, upon his overdraft.

But the auditor's report finds the fact, that the plaintiffs loaned Mr. Sinclair $12,000 and took his note dated February 8, 1876, relying upon this guaranty of the defendants; and from that time to the time of this audit it was always the understanding of the bank that it was for the payment of this $12,000 that said guaranty was held, and that no part of the principal of said $12,000 has ever been paid. And we claim that Sinclair had full knowledge, from the standing and inspection of his bank account, that the bank had given him credit, and applied the Waumbek Lumber Company's and Barron notes upon his overdraft; and he never disaffirmed that transaction, but accepted it, and allowed the credit to stand, never dissenting from it; and the bank, as the report shows in all its findings, never had any knowledge or information, till the audit, that any other application was claimed or should have been made of those notes than was made.—Sinclair thereby confirming and ratifying fully and completely the application made by the bank. But if it was a fact proved and found by the auditor, that the application of the notes delivered by Sinclair to Cummings on January 24, 1877, was directed and understood by Sinclair and Cummings at that time to be made upon this $12,000 note, it makes no difference, and is immaterial in this case, because the defendants' guaranty would then cover the overdraft of Sinclair, and the plaintiffs can recover under the new count which has been allowed to be filed in the case.

Parol proof was admissible to explain or contradict the receipt of W. H. Cummings, of date of January 24, 1877, the paper not being under seal. *Giddings* v. *Munson*, 4 Vt. 308: *Sowles* v. *Sowles*, 11 Vt. 146; *Winn* v. *Chamberlin*, 32 Vt. 318. The receipt

signed by Cummings is not a contract, being signed by but one party. See cases above cited. The signer of the receipt may contradict it by parol proof. *Sowles* v. *Sowles*, 11 Vt. 146.

FOSTER, J. The defendants contend that they are not liable on the contract of guaranty which they signed, because there has been no notice to them of an acceptance of the guaranty on the part of the bank, or of the amount of money advanced on the faith of it; and they argue that the guarantors have the right to know what the acceptor of the guaranty expects of them, in order that they may take security or indemnity from the party in whose favor they have assumed liability; that they are entitled to notice within a reasonable time; and that a reasonable time would be such time as would secure to them all means of protecting themselves. But at the date of their contract they assumed a liability which was to continue. This was a voluntary undertaking on their part, and the opportunity for indemnity was afforded at the time when they assumed their responsibility; and a failure to avail themselves of that opportunity was not attributable to any want of notice by the bank, but only to their own laches and their improvident confidence.

When notice of the acceptance of a guaranty is required, it is for the purpose of informing the guarantor that the person to whom his offer or proposal to guarantee is addressed intends to look to him ultimately for payment of the liability, and what the extent of that liability is. But this doctrine is inapplicable to cases where the agreement to accept is contemporaneous with the guaranty, or constitutes the consideration or basis of it. In such a case all the parts of the transaction are connected, and notice of acceptance is implied. Fell Guar. 319; 2 Pars. Con. 13; Sto. Prom. Notes (7th ed.), s. 460, note 2; *Wildes* v. *Savage*, 1 Sto. 22; *Walker* v. *Forbes*, 25 Ala. 139, 147; *Jackson* v. *Yandes*, 7 Blackf. 526; *Maynard* v. *Morse*, 36 Vt. 617; *Howe* v. *Nickels*, 22 Me. 175; *Smith* v. *Dann*, 6 Hill (N. Y.) 543; *Bleeker* v. *Hyde*, 3 McLean 279; *New Haven Co. Bank* v. *Mitchell*, 15 Conn. 206; *Douglass* v. *Howland*, 24 Wend. 35; *Union Bank* v. *Coster*, 3 Comst. 212; *Powers* v. *Bumcratz*, 12 Ohio St. 273.

And it is equally clear, that in order to charge the defendants no demand of payment or notice of Sinclair's default was required. The contract and undertaking of the defendants was not merely a promise to pay an indefinite sum within an indefinite time, upon the default of the principal debtor. It was a joint and several absolute promise to guarantee the payment of a sum limited in amount, upon no other condition than that the debt, the payment of which was thus guaranteed, should be contracted before March 1, 1878. The insolvency of Sinclair before the expiration of that period could not affect the liability of the guarantors. That was a contingency which, in the exercise of reasonable prudence, they

were bound to contemplate and provide for at the time of entering
into their contract with the plaintiffs.  The liability of the defend-
ants attached unconditionally and became fixed as soon as the
indebtedness of Sinclair subsequently occurred.  No condition as
regards presentment or notice is expressed or implied in the terms
of the contract.  It is an undertaking and promise to do a certain
thing in a certain specific event.  The event is a default in the
payment of the principal party's debt on or before a certain date.
When this event happened, the liability of the guarantors, by the
terms of their guaranty, was complete.

"If presentment and notice or any other acts are necessary to
establish a default on the part of the person whose contract is
guaranteed, they are also necessary to establish the liability of the
guarantor, because he is liable only upon the default of the former;
for example, if the contract guaranteed is that of an indorser, or
(as in *Philips* v. *Astling*, 2 Taunt. 206) that of a drawer of a bill,
presentment to the acceptor or maker, and notice to the indorser
or drawer, are necessary, because, without such presentment and
notice, there would be no default on the part of the indorser or
drawer, and therefore no liability on the part of the guarantor.
But if no presentment or notice is necessary to establish a default
on the part of the person whose contract is guaranteed, as in the
case of the maker of a note [the case at bar] or the acceptor of a
bill, none is necessary to establish the liability of the guarantor."
Sto. Prom. Notes (7th ed.) 622–627, note 2 ; Leake Con. 338.
"In some cases of contracts to do a certain thing in a certain spe-
cific event, the law implies a condition that notice shall be given
of the happening of the event, and no liability arises under the
contract until such notice is given.  These are cases where the
event upon which the party has promised to perform is within the
peculiar knowledge of the other party, and the party that is to
perform cannot make himself acquainted with it.  But such a con-
dition is not implied in cases where the event upon which the act
to be done is the act or default of a third person, for the party
who is to perform can make himself acquainted with the happening
of the event."  Therefore it is said, and has been repeatedly held
in England and in America, that in the case of a guaranty there is
no implied condition that notice shall be given of the default of
the party whose contract is guaranteed.  *Vyse* v. *Wakefield*, 6 Mee.
& W. 442, 452 ; *Dawson* v. *Wrench,* 3 Exch. 359, 362 ; *Makin* v.
*Watkinson,* L. R. 6 Ex. 25 ; *Lent* v. *Padelford,* 10 Mass. 230 ;
*Vinal* v. *Richardson,* 13 Allen 521, 532 ; *Train* v. *Jones,* 11 Vt.
444 ; *Peck* v. *Barney,* 13 Vt. 93 ; *Sylvester* v. *Downer,* 18 Vt. 35 ;
*Noyes* v. *Nichols,* 28 Vt. 178 ; *Montgomery* v. *Kellogg,* 43 Miss.
486 ; Fell Guar. 318.

Independently of the particular terms of his contract, a guaran-
tor has certain rights in his character of surety.  These rights
appertain to all sureties, whether they join in the same contract

with the principal, or bind themselves by a collateral agreement. An example of one of the surety's rights is, that there shall be no dealing with the principal by which the surety's right of recourse to him shall be affected. But the surety has not the right to require the taking of any active steps against the principal, or notice to himself of the principal's default. The reason of this has been stated in these words: "The surety is a guarantor, and it is his business to see whether the principal pays, and not that of the creditor." Lord *Eldon* in *Wright* v. *Simpson*, 6 Ves., Jr., 714, 734; *Bellows* v. *Lovell*, 5 Pick. 307, 311; *Hunt* v. *Bridgham*, 2 Pick. 581. Thus it is said, in the note to Story on Promissory Notes, *ante*, "This seems, at least, as applicable to a person who enters into a contract of guaranty. So far as the question of presentment or notice is concerned, the person who undertakes to pay upon the default of another seems to be under as absolute an obligation to pay when the default occurs, as the person who enters into an original agreement to pay jointly with, and as surety for, another. The terms of a guaranty seem to impose on the guarantor the duty of seeing whether the principal pays: if the principal does not pay, and the guarantor sustains loss through ignorance of his default, the loss is owing to his own negligence, and it seems much more appropriate that it should be borne by him than by the person to whom he has agreed to be answerable upon the principal's default." Many English authorities are cited in support of this doctrine, which is certainly sustained by the following (among other) American cases: *Gage* v. *Mechanics' Bank*, 79 Ill. 62; *Dickerson* v. *Derrickson*, 39 Ill. 574; *Gage* v. *Lewis*, 68 Ill. 604, 618; *Hammond* v. *Gilmore*, 14 Conn. 479; *Bushnell* v. *Church*, 15 Conn. 406; *Donley* v. *Camp*, 22 Ala. 659; *Townsend* v. *Cowles*, 31 Ala. 428; *Woolley* v. *Sergeant*, 8 N. J. L. 262; *Noyes* v. *Nichols*, 28 Vt. 159; *Keith* v. *Dwinnell*, 38 Vt. 286, 293; *Clay* v. *Edgerton*, 19 Ohio St. 549; *Watson* v. *Walker*, 23 N. H. 471; *Waters* v. *Thanet*, 2 A. & E. (N. S.) 765, 770; *Kautzman* v. *Weirick*, 26 Ohio St. 330.

Earlier Massachusetts cases, which seem to hold the contrary doctrine, are disapproved in *Vinal* v. *Richardson*, 13 Allen 521, 533, in which it is said, "The circumstances show pretty conclusively that the defendant knew of the default of the principal debtor. If he did not know of it, it was from his own neglect to inform himself. He has not suffered from want of notice."

In this state the tendency of the cases is to establish the rule, that, where the guaranty is in the nature of an offer to be responsible for a contingent, future liability (*e. g.*, a guaranty of payment for goods that may afterwards be sold), it is necessary to give reasonable notice of the extent to which it has been acted on; but that no notice is necessary in the case of an absolute guaranty of a specific engagement. *Beebe* v. *Dudley*, 26 N. H. 249; *March* v. *Putney*, 56 N. H. 34.

In view of this vast preponderance of authority, we have no hesitation in holding that in all the apparent circumstances of the present case, no notice of the acceptance of the guaranty, nor of demand of payment, nor of default to pay on the part of the debtor, was required. Such we understand to be the law of Vermont, where this writing was executed, and where the contract was to be performed.

The admission of the evidence, in explanation or contradiction of the contract expressed in Cummings's receipt to Sinclair, was wrong. There being no ambiguity in the terms used, the interpretation of the contract is exclusively for the court, although the writing may be loosely called a receipt. See *Goodwin* v. *Goodwin, ante*, where this subject is more fully considered. See, also, *Sowles* v. *Sowles*, 11 Vt. 146; *Winn* v. *Chamberlin*, 32 Vt. 318, 320.

By his writing of January 24, 1877, Cummings acknowledges the receipt of $12,250, which he agrees "to apply on his [Sinclair's] notes, and to pay my check of this date for $5,500." The meaning of this language would seem to be too plain to require or admit of explanation. There were no other notes of Sinclair's in the bank than the notes comprising the $12,000 loan and the Pierce and Quimby notes. Whatever other "paper checks" the bank may have held, representing Sinclair's overdrafts, the application is, by the terms of Cummings's receipt or contract, specific. It is not to be applied to Sinclair's notes and checks generally, but to "his notes," and to "my check of this date for $5,500." *Expressio unius est exclusio alterius.* The plaintiffs, therefore, had no right to apply the balance of $6,750 upon Sinclair's overdrawn account; but it must be applied *pro rata* to the extinguishment *pro tanto* of the guaranteed indebtedness of Sinclair. The guaranty includes all the indebtedness of Sinclair, not exceeding $12,000, on or before March 1, 1878. On that date, after the application of the $6,750 to the notes of Sinclair and of Pierce and Quimby, Sinclair being indebted to the bank on his overdrawn account more than $10,000, there was still a large indebtedness remaining, for $12,000 of which the defendants are jointly and severally liable in the action on the guaranty.

The claim of Quimby, that the money paid by Sinclair as usury to the bank should be credited to him, cannot be sustained. The right to recover money paid for usury is personal to the party paying it. The right to sue for it does not pass to assignees in bankruptcy, and it cannot be recovered by creditors through the trustee process. *Barker* v. *Esty*, 19 Vt. 131; *Churchill* v. *Cole*, 32 Vt. 93; *Austin* v. *Chittenden*, 33 Vt. 553; *Low* v. *Prichard*, 36 Vt. 183; *Wheatley* v. *Waldo, ib.* 237. And the fact that usurious interest has been paid by the principal will not avail a surety as a defence *pro tanto*, in an action on the note against him alone. *Ward* v. *Whitney*, 32 Vt. 89; *Davis* v. *Converse*, 35 Vt. 503; *Cady* v. *Goodnow*, 49 Vt. 400; *Lamoille Co. Bank* v *Bingham*, 50 Vt. 105.

Sinclair having testified in substance that the Quimby note was to be held as collateral security for the Noyes acceptance, it was competent for the plaintiff to contradict him by showing that he had made statements and admissions contrary to his evidence upon the stand. Such was the effect of the testimony of Cummings.

When Quimby entrusted Sinclair with his note, he gave him an implied authority to deal with it as he pleased,—to make such contract with the bank concerning it as Sinclair might find to be for his advantage. It is not intimated that Quimby gave any directions that it should be used only as collateral security for the Noyes acceptance, or that he had any knowledge that it was intended to be so pledged, or that it was not discounted and its avails placed to the credit of Sinclair. But it is held, that where a surety confides to the principal the power of making a contract, he confides to him the power of furnishing evidence of the contract; and that if the contract be made by parol, subsequent declarations of the principal are admissible in evidence, though not conclusive. 1 Greenl. Evid., s. 187; *Meade* v. *M'Dowell*, 5 Binn. 195; *Joslyn* v. *Smith*, 13 Vt. 353; *Wilson* v. *Green*, 25 Vt. 450; *Brown* v. *Welch*, 38 Vt. 241.

Upon the same ground, and as a part of the *res gestæ*, the evidence of Leslie concerning the actual contract, as indicated by the books of the bank and the absence of a mark upon the note, such as designated notes held as collateral, was properly admitted.

It therefore follows, that after the application of the $6,750, as before indicated on Sinclair's $12,000 note, and on the Pierce and Quimby notes, the plaintiff will be entitled to judgment in all three of these actions.

*Cases discharged.*

STANLEY, BINGHAM, and CLARK, JJ., did not sit: the others concurred.